CUMMINGS, Circuit Judge.
 

 Tasemkin Furniture Company, Inc. (“Old Tasemkin”) went belly-up, but not before allegedly running up over $300,000 in delinquent pension fund payments and ERISA withdrawal liability from plaintiffs, the Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund (the “Fund”). The Fund attempted to recover on its claim in the Chapter 7 liquidation proceeding that followed, to no avail. Old Tasemkin had entered into a debt compromise agreement with its secured lender and, shortly thereafter, turned the interest over to a company called Tasemkin, Inc. (“New Tasemkin”) which promptly foreclosed on the collateral. There was apparently nothing left over in the bankruptcy estate for the remaining creditors (including the Fund), who received no distribution. The bankruptcy case was closed on April 30, 1992.
 

 Two years later the Fund tried another tack, suing New Tasemkin under the theory of successor liability;
 
 [1]
 
 the district court’s rejection of the successor liability claim provides the meat for this appeal. The suecessorship doctrine provides an exception from the general rule that a purchaser of assets does not acquire a seller’s liabilities. See
 
 Chaveriat v. Williams Pipe Line Co.,
 
 11 F.3d 1420, 1424 (7th Cir.1993). Most states have adopted exceptions to the general no-liability rule that allow creditors to pursue the successor if the “sale” is merely a merger or some other type of corporate reorganization that leaves real ownership unchanged.
 
 Id.
 
 Successor liability under federal common law is broader still: in order to protect federal rights or effectuate federal policies, this theory allows lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before the acquisition; and (2) there was “substantial continuity in the operation of the business before and after the sale.”
 
 E.E.O.C. v. G-K-G, Inc.,
 
 39 F.3d 740, 748 (7th Cir.1994). Successor liability is an equitable doctrine, not an inflexible command, and “in light of the difficulty of the succes-sorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate.”
 
 Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.,
 
 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974); see also
 
 Steinbach v. Hubbard,
 
 51 F.3d 843, 846 (9th Cir.1995).
 

 This Circuit held just a few years ago that successor liability could he in a case much like this one, where the predecessor had racked up unpaid pension fund contributions under ERISA. See
 
 Upholsterers International Union Pension Fund v. Artistic Furniture of Pontiac,
 
 920 F.2d 1323, 1327 (7th Cir.1990); see also
 
 Central States Pension Fund v. Hayes,
 
 789 F.Supp. 1430, 1435-1436 (N.D.Ill.1992) (relying on
 
 Artistic Furniture
 
 analysis in holding successor liable for predecessor’s delinquent withdrawal liability under ERISA). Why, then, did the Fund lose this case on New Tasemkin’s motion to dismiss? Certainly not because of the facts of the transfer: if, as we must at this point in the litigation, we accept the Fund’s version of them, these facts suggest both notice and continuity. New Tasemkin was owned by the daughter-in-law of Old Tasemkin’s owner, Irving Steinberg; Steinberg’s son Leslie, formerly the registered agent for Old Tasemkin, was New Tasemkin’s president and secretary; New Tasemkin operated the same business (albeit from fewer locations), employed largely the same staff, and relied primarily on the same suppliers. Leslie Steinberg’s active role in both old and new companies may well satisfy the notice prong; New Tasemkin’s assumption of Old Tasem-kin’s corporate identity makes a strong case for substantial continuity. See
 
 G-K-G,
 
 39 F.3d at 748 (substantial continuity is “satisfied if no major changes are made in [the]
 
 *50
 
 operation”);
 
 Steinbach,
 
 51 F.3d at 846 (continuity found to exist where successor firm kept same employees, operated out of same office, and provided same services).
 

 In this case, however, a bankruptcy proceeding stood between Old Tasemkin’s accumulation of ERISA liability and the sale of assets to New Tasemkin. The district judge thought that allowing the Fund, which had lost out in bankruptcy court, to proceed against New Tasemkin on its successor liability theory would frustrate the primacy of the Bankruptcy Code. Accordingly he dismissed the Fund’s complaint, stating that he would “not allow the court-created doctrine of successor liability to preempt the congressionally enacted priority scheme of the Bankruptcy Code.”
 
 Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.,
 
 172 B.R. 877, 879 (N.D.Ill.1994).
 

 As the district judge noted, a number of courts have rejected successor liability claims that followed on the heels of bankruptcy proceedings. See,
 
 e.g., Forde v. Kee-Lox Mfg. Co.,
 
 437 F.Supp. 631 (W.D.N.Y.1977) (Bankruptcy Act entitles purchasers after liquidation to take title free of all claims),
 
 aff'd on other grounds,
 
 584 F.2d 4 (2d Cir.1978);
 
 In re White Motor Credit Corp.,
 
 75 B.R. 944, 950-951 (N.D.Ohio 1987) (Bankruptcy Code, whose purposes include final resolution and discharge of corporate debt, pre-empts otherwise-valid successor liability);
 
 In re All American of Ashburn, Inc.,
 
 56 B.R. 186, 190 (N.D.Ga.1986) (bankruptcy sale precludes imposition of successor liability for product liability claim);
 
 In re New England Fish Co.,
 
 19 B.R. 323, 328 (W.D.Wash.1982) (allowing successor liability after bankruptcy sale would afford certain claimants an unwarranted priority).
 
 [2]
 

 To the extent that they suggest a blanket rule, however, these cases are flawed, and the analytic foundation on which they rely contains a number of cracks. The cases stand for the proposition that it is desirable, perhaps even necessary, to shield purchasers of failing businesses from liability incurred by the predecessors. Such protection is viewed as a means of encouraging market growth and the fluidity of corporate capital. Fear of successor liability, this argument runs, would “chill” sales in bankruptcy and as a result harm employees of the failed concern who might have retained jobs with the successor business. See
 
 Steinbach,
 
 51 F.3d at 846 (in case involving “the attempted purchase of a company in distress,” equities may favor not imposing successor liability); see also
 
 Musikiwamba v. ESSI, Inc.,
 
 760 F.2d 740, 751 (7th Cir.1985) (companies may have trouble selling their assets for a decent price because “successors will be unwilling to assume a business involved in substantial time-consuming and expensive litigation when the assets themselves lack substantial value”).
 

 This argument pertains equally well, however, to a company nearing the brink of bankruptcy. This was the case in
 
 Artistic Furniture,
 
 in which the furniture manufacturer was taken over following a foreclosure and subsequent sale of assets. 920 F.2d 1323. The potential for chilling does not vary as a function of a company’s precise degree of distress, and there is no reason to accord the purchasers of formally bankrupt entities some special measure of insulation from liability that is unavailable to ailing but not yet defunct entities. (Of course, it is neither certain nor clear that the chilling effect need give us pause: purchasers can demand a lower price to account for pending
 
 *51
 
 liabilities of which they are aware, and under federal successorship principles will not be held responsible for liabilities of which they had no notice.)
 

 The second argument raised to preclude successor liability claims following bankruptcy is that the successorship doctrine frustrates the orderly scheme of the Bankruptcy Code by allowing some unsecured creditors to leapfrog over others. See,
 
 e.g., New England Fish,
 
 19 B.R. at 328 (“where claims result from non-bankruptcy litigation or administrative proceedings, and the debtor becomes involved in bankruptcy, the only framework for priorities among claimants is that of the bankruptcy estate.”). "When a creditor has already pursued its claim in the bankruptcy proceeding and has come up empty-handed, this argument asserts, permitting a claim against the successor would unduly reward that creditor. See
 
 Forde,
 
 437 F.Supp. at 633 (assertion of claim after bankruptcy sale gives plaintiff priority over claims paid in accordance with Bankruptcy Code, hence rearranging Code’s priority scheme).
 

 Or so the argument goes. In fact, once a bankruptcy proceeding is completed and its books closed, the bankrupt has ceased to exist and the priorities by which its creditors have been ordered lose their force. In the instant case, whatever happens to New Tasemkin in the Fund’s pursuit of this claim will have no effect on the bankruptcy proceeding — that is over and done with and the debtor, Old Tasemkin, has ceased to be. The Fund’s suit, a full two years after the bankruptcy case has closed, “cannot possibly affect the amount of property available for distribution to [Old Tasemkin’s] creditors; all of [Old Tasemkin’s] property has already been distributed.”
 
 Zerand-Bernal Group, Inc. v. Cox,
 
 23 F.3d 159, 162 (7th Cir.1994).
 

 What the imposition of successor liability would accomplish, and what the district court objected to, would be a second opportunity for a creditor to recover on liabilities after coming away from the bankruptcy proceeding empty-handed. But a second chance is precisely the point of successor liability, and it is not clear why an intervening bankruptcy proceeding, in particular, should have a per se preclusive effect on the creditor’s chances.
 

 In so holding we do not suggest that a creditor’s prior opportunity to satisfy the claim against the predecessor is irrelevant. In fact, this Circuit and others have held that a creditor’s ability to recover against the predecessor is a factor of significant weight in deciding whether to allow successor liability. See
 
 Musikiwamba,
 
 760 F.2d at 750-751 (stating that “[u]nless extraordinary circumstances exist, an injured [party] should not be made worse off by a change in the business. But neither should an injured employee be made better off ...,” and cautioning against “imposing liability on a successor when a predecessor could have provided no relief whatsoever”); see also
 
 Steinbach,
 
 51 F.3d at 847 (purpose of successor liability is “not to provide windfalls” for people who were unable to recover from the predecessor because the predecessor had no means of satisfying the claim). Instead of being dis-positive, however, the availability of relief from the predecessor is a factor to be considered along with other facts in a particular case. Here, those facts include the apparent nature of the acquisition of Old Tasemkin by New Tasemkin — which clearly had the effect, intended or no, of frustrating unsecured creditors while resurrecting virtually the identical enterprise.
 

 The district court, therefore, although correct in considering the ramifications of the Fund’s participation in Old Tasemkin’s underlying liquidation, was not absolutely precluded by the bankruptcy proceedings from finding successor liability against New Ta-semkin. We therefore reverse the district court’s order granting New Tasemkin’s motion to dismiss, and remand so that the Fund can proceed with its complaint.
 

 [1]
 

 . Prior to oral argument in this case, the Fund informed us that New Tasemkin has been shut down by the Illinois Department of Revenue for failure to pay its sale taxes and no longer has any assets.
 

 [2]
 

 . The Fund attempts to distinguish these cases on the ground that they involved asset sales conducted by bankruptcy trustees, which § 363(f) of the Bankruptcy Code specifically addresses and for which certain notice and hearing requirements are prescribed. See
 
 In re Savage Industries, Inc.,
 
 43 F.3d 714, 720 (1st Cir.1994). We need not decide whether New Tasemkin's acquisition of Old Tasemkin’s assets sufficiently approximated a trustee sale, which under § 363(f) can be made free and clear of existing interests, to overcome this distinction. Similarly we need not decide whether § 524(e) of the Code, which states that discharge in bankruptcy releases only the debtor, would compel us to find that the cleansing power of a bankruptcy does not extend to the successor. See
 
 Zerand-Bernal Group, Inc. v. Cox,
 
 23 F.3d 159, 163 (7th Cir.1994). As will be made clear, this case does not directly implicate the Bankruptcy Code, since the underlying bankruptcy proceeding is long over. Our resolution of this case turns on the doctrine of successor liability and its appropriate application, not on specific provisions of the Code.