SAM A. BEATTY, Retired Justice.
The plaintiffs, William Craig Glenn and Delona Gray Glenn, appeal from a summary judgment entered in favor of the defendant, Steelox Building Systems, Inc. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. We affirm.
On April 22, 1988, Craig Glenn was working for Dunn Construction Company. Dunn was erecting a steel building for Southern Research Institute (“SRI”). The budding had been designed, manufactured, and sold in Mt form by Budding Technologies Corporation (“BTC”). The building collapsed while Craig Glenn was working on it; he fell approximately 46 feet, landing on a concrete floor and suffering severe injuries. Craig Glenn and his wife, Delona, sued BTC and SRI, pursuant to § 25-5-11, Ala.Code 1975 (the third-party liability provisions of Alabama’s Workmen’s Compensation Act). The Glenns alleged claims under the Alabama Extended Manufacturer’s Liability Doctrine; breach of the warranties of merchantability and fitness; negligence; wantonness; and failure to provide a safe workplace.
On September 19,1991, BTC filed a voluntary petition for bankruptcy, pursuant to 11 U.S.C. § 1101 et seq. (Chapter 11) in the United States Bankruptcy Court for the Southern District of Ohio. BTC filed a suggestion of bankruptcy with the trial court on November 8, 1991, and served the Glenns’ attorney with a copy. On December 12, 1991, the bankruptcy court approved the sale of a portion of BTC’s assets to Kawada Industries, U.S.A. Kawada later transferred those assets to Steelox, a wholly owned subsidiary.
In its order approving the asset sale, the bankruptcy court found that “[pjroper, timely, adequate and sufficient notice” had been given to all recorded creditors and interested parties in accordance with Bankruptcy Rule 2002. The bankruptcy court also noted that BTC’s sale motion had been served by advertising a notice in The Wall Street Journal, midwestem edition, and in The Court Index Press. The bankruptcy court’s order provided that the sale of assets to Kawada was made “free and clear of any and all liens, claims, encumbrances and interests.” The order further stated:
“Neither Kawada nor any of its successors or assigns or the officers, directors, stockholders, employees, agents or representatives of any of them shall be, or shall be deemed to be liable, whether as a successor, an assignee or otherwise, for any Liabilities of Debtor or for any Liabilities whatsoever at any time arising out of or with respect to Debtor’s conduct of its business or the acquisition or lease, manufacture or processing, ownership, use, maintenance, storage, transportation or disposition of the Acquired Assets by or on behalf of Debtor.”
The order also provided that neither Kawada nor its successors or assigns would be deemed a successor corporation to BTC, and that BTC would remain solely liable for its liabilities.
In May 1993, SRI moved for a summary judgment. The trial court entered a judgment in SRI’s favor shortly thereafter and certified the judgment as final pursuant to Rule 54(b), Ala.R.Civ.P. The Glenns appealed; our supreme court affirmed, without opinion. Glenn v. Southern Research Institute, 662 So.2d 289 (Ala.1994) (table). Meanwhile, on July 20, 1993, the Glenns amended their complaint, with leave of the court, to add Steelox as a defendant.
Steelox moved for a summary judgment in February 1996; the trial court entered a judgment in its favor in March. The trial court held that under the terms of the bankruptcy court’s order approving BTC’s asset sale to Kawada, neither Kawada nor its successors or assigns were to assume BTC’s *144 liabilities. The trial court then concluded that the bankruptcy court’s order was entitled to full faith and credit, and, therefore, that Steelox’s liability was precluded. Because SRI had secured a judgment in its favor and claims against BTC were precluded by its bankruptcy, the March 1996 judgment was a final judgment in this case. After the trial court denied the Glenns’ post-judgment motion, they appealed.
The Glenns first contend that they were deprived of due process in the bankruptcy court because they were never notified of BTC’s proposed sale of assets and because the bankruptcy court order was entered before the time for filing claims had expired. The Glenns were notified, however, that BTC had initiated bankruptcy proceedings. They could have requested that they be sent notices as the ease progressed, pursuant to Bankruptcy Rule 2002, but they apparently did not do so. We cannot determine from the record whether the Glenns ever filed a proof of claim or otherwise sought to pursue their claims against BTC in the bankruptcy court. If the Glenns were deprived of due process in this case, then the bankruptcy court would have been the proper forum in which they should have challenged their lack of notice of the proposed sale. We will not now revisit the bankruptcy court’s 1991 order, an order that specifically concluded that all notices had been properly given in accordance with Bankruptcy Rule 2002. Furthermore, we note that at least one bankruptcy court has held that notice in publications of national circulation complied with the requirements of due process. See In re White Motor Credit Corp., 75 B.R. 944 (Bankr.N.D.Ohio 1987).
The Glenns also contend that the lack of notice rendered the bankruptcy court’s 1991 order ineffective as to them, citing In re Mooney Aircraft, Inc., 780 F.2d 367 (5th Cir.1984). The United States Court of Appeals for the Fifth Circuit stated in Mooney that the lack of notice to a creditor might require the court to find that the bankruptcy court’s' prior judgment was ineffective as to the creditor’s claims if it were necessary to reach that question. The case was decided on other grounds, so the statement relied on by the Glenns is merely dictum. Again, however, the Glenns should have challenged the effectiveness of the bankruptcy court’s order approving the asset sale in that court or in the appropriate federal court to which an appeal from that bankruptcy court would be taken.
Finally, the Glenns maintain that Steelox is a corporate successor to BTC and, as such, is liable for BTC’s alleged negligence or wantonness in injuring Craig Glenn. The Glenns urge us to adopt the reasoning in Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc., 59 F.3d 48 (7th Cir.1995), and hold that there is no reason that a prior bankruptcy should preclude the imposition of successor liability. We decline to do so. The United States Court of Appeals for the Seventh Circuit declined to follow the decisions of several bankruptcy courts that had rejected successor liability claims following a bankruptcy. See, e.g., In re White Motor Credit Corp., 75 B.R. 944 (Bankr.N.D.Ohio 1987); In re All American of Ashburn, Inc., 56 B.R. 186 (Bankr.N.D.Ga.), aff'd, 805 F.2d 1515 (11th Cir.1986); In re New England Fish Co., 19 B.R. 323 (Bankr.W.D.Wash.1982); Forde v. Kee-Lox Mfg. Co., 437 F.Supp. 631 (W.D.N.Y.1977), aff'd, 584 F.2d 4 (2d Cir.1978). This court does not have the jurisdiction to decide questions of law relating to bankruptcy. “The very subject matter of bankruptcy has been preempted by federal law.” International Longshoremen’s Ass’n v. Davis, 470 So.2d 1215, 1217 (Ala.1985), aff'd, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). Furthermore, it is not the province of this court to resolve conflicts between the decisions of a federal appeals court and federal trial courts. We pretermit any discussion of the Glenns’ argument that Steelox is a corporate successor to BTC and is, therefore, liable for its torts.
In conclusion, we agree with the trial court that the bankruptcy order approving the asset sale clearly provided that neither Kawada nor its successors or assigns are liable for any claims against BTC. That order effectively precludes the imposition of successor liability upon Steelox. The trial court prop *145 erly entered the summary judgment in favor of Steelox; that judgment is due to be, and is hereby, affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
YATES and THOMPSON, JJ., concur.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur in the result.