1999 PA Super 23

Charles G. **BOSTICK**, Patricia R. **Bostick**, **Administrators of the Estate of Marion Bostick and Joanne Yarko, Administratrix of the Estate of David A. Yarko, Appellants,**

v.

**SCHALL'S BRAKES AND REPAIRS, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1998.

Filed Feb. 1, 1999.

Reargument Denied April 1, 1999.

Robert B. Lawler, Philadelphia, for appellants.

Jerry A. Snyder, Allentown, for appellee.

Before JOHNSON, and MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Charles G. Bostick and Patricia R. Bostick ("the Bosticks"), Administrators of the Estate of Marion Bostick, and Joanne Yarko ("Yarko"), Administratrix of the Estate of David A. Yarko (collectively referred to as the "Appellants"), appeal from the final judgment entered in the Court of Common Pleas of Northampton County.[1] We reverse the order granting summary judgment in favor of Appellee, Schall's Brake and Repairs, Inc.

¶ 2 The Bosticks and Yarko filed wrongful death and survivor actions ("Schall # 1" action/cases) against Schall's Sales and Services Inc. ("Schall # 1") and James C. Gilfert, for the wrongful death of Marion Bostick, Joanne Yarko, and David A. Yarko ("the decedents").[2] The decedents suffered fatal injuries when the car in which they were riding was hit by Gilfert, who was driving a vehicle owned by Schall # 1. On October 31, 1994, after a jury trial, a verdict was returned against Schall # 1 in the amount of $437,500.00 for the Bostick Estate and $337,500.00 for the Yarko Estate. On August 21, 1995, while post-trial motions were pending, Schall # 1 filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania. On November 1, 1995, the trial court stayed the legal action while the bankruptcy proceedings were pending. See 11 U.S.C. § 362 (automatic stay provision of the Bankruptcy Code). On December 5, 1995, the Honorable Thomas M. Twardowski issued an order discharging Schall # 1's debt. See L.B.R. 4008.2(b) (entry of discharge in Chapter 7 cases). On January 10, 1997, the trial court, based upon Judge Twardowski's decision, discontinued the Schall # 1 cases in the Court of Common Pleas.[3]

¶ 3 Subsequent to the Schall # 1 verdict, but prior to the court's discontinuance of the Schall # 1 cases, Appellants filed the underlying action ("Schall # 2" action/case) on October 11, 1996, against Appellees, Schall's Brakes and Repairs, Inc. ("Schall # 2"), and Edwin Schall, Delores M. Schall, and Dennis Schall, Sr., in their individual capacities (collectively referred to as "Appellees"). In their complaint, Appellants alleged that Schall # 1 fraudulently transferred its assets to Schall # 2, prior to its declaration of bankruptcy, to avoid paying the judgments in the Yarko/Bostick wrongful death actions. In essence, Appellants claimed that Schall # 2 was the alter ego/successor corporation of Schall # 1 (the bankrupt corporation) and should be liable for its debts. Appellees filed an answer denying the existence of any such "alter ego" corporation and a counterclaim alleging, *inter alia*, abuse of process; they also requested compensatory and punitive

---

* Retired Justice assigned to the Superior Court.

1. Appellees claim that Appellants were required to file their notice of appeal within thirty days of the date the order granting nonsuit was handed down by the trial court on March 17, 1998, or by April 17, 1998. However, pursuant to Pa.R.A.P. 108 (date of entry of orders) "in computing any period of time under these rules involving the date of entry of an order by a court ..., the day of entry shall be the day the clerk of the court ... mails or delivers copies of the order to the parties." Pa.R.A.P. 108(a). In the present case, the docket notes that a copy of the notice, order and opinion of March 17, 1998, and praecipe for entry of judgment was sent to the parties on April 20, 1998. Therefore, Appellants properly filed their notice of appeal within thirty days of this date on May 18, 1998.

2. These actions were docketed in the Court of Common Pleas of Northampton County, No. 1991–C–797 (Bostick case) and No. 1991–C–893 (Yarko case); the cases, while filed separately, were consolidated prior to trial.

3. See 11 U.S.C. § 524(a)(2) ("[a] discharge in a case under [the Bankruptcy Code]—... operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

damages claiming that the Schall # 2 action was filed frivolously and without justification. Appellees moved for summary judgment; on December 15, 1997, the trial court granted the motion in favor of Schall # 2, finding that because Appellants failed to appeal the order discontinuing the Schall # 1 cases, the court had no authority to revisit the issue in the Schall # 2 action. At the same time, the court denied the motion with respect to the individual Defendants/Appellees and the Appellees' counterclaim.

¶ 4 On March 19, 1998, the trial court granted nonsuit in favor of the remaining individual Appellees for Appellants' failure to appear for trial. *See* Pa.R.C.P. 218(a). Appellees voluntarily moved for nonsuit of their counterclaim which was granted by the court. On April 20, 1998, upon praecipe of Appellants, the court entered judgment in the Schall # 2 action. Plaintiffs/Appellants filed this timely appeal, asserting the following issues for our consideration:

(1) Did the Court err when it ignored the federal prohibition of discharge of debt when the debtor is not an individual, but a corporation, as provided in 11 U.S.C.S. § 727?[4]

(2) Did the Court err in failing to recognize that under Pennsylvania law, one of the exceptions to the general rule of successor liability is that the successor corporation is merely a continuation or alter ego of the predecessor corporation?[5]

(3) Did the Court err when it overlooked the Rule of Federal Procedure which states that the failure of the creditor to object to the discharge does not waive the prohibition against the discharging corporate debt?[6]

¶ 5 Before we may review the substantive issues on appeal, we must analyze whether this appeal is properly before our court. The notice of appeal states that "the [Appellants/]Plaintiffs ... hereby appeal to the Superior Court of Pennsylvania judgment entered in this matter on the 17th Day of March 1998. The final judgment has been entered in [sic] the docket as evidenced by the attached copy of the docket entries." The March 19, 1998 order to which Appellants refer in their notice of appeal is the order entering nonsuit against the Appellants for their failure to appear for trial. It is well settled that the mere failure to appear for trial is a ground for the entry of nonsuit. Pursuant to Pa.R.C.P. 218(a), "where a case is called for trial, if without satisfactory excuse a plaintiff is not ready, the court may enter a nonsuit on motion of the defendant or a *non pros* on the court's own motion." Pa. R.C.P. 218. In 1995, Rule 218 was amended by adding subsection (c), which states that "[a] party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse." Pa.R.C.P. 218(c).

¶ 6 Presently, we are concerned with the appearance of a procedural omission by Appellants. From the record, it is evident that Appellants never filed a motion to remove the non-suit entered in the instant case. Pursuant to Pa.R.C.P. 227.1(a):

(a) **After trial** and upon the written Motion for Post–Trial Relief filed by any party, the court may

---

4. Section 727 of the Bankruptcy Code ("the Code") states in part that "[t]he court shall grant a debtor a discharge, unless—the debtor is not an individual." 11 U.S.C. § 727(a)(1). Under the Code, a "debtor" means a "person or municipality concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). A "person" under the Code includes individual, partnership, and corporation, but does not include governmental unit[.] 11 U.S.C. § 101(41). Therefore, while "individual" is not defined in the Code, presumably it is neither intended to include nor does it mean the same thing as a "corporation," because "individual" and "corporation" are indicated as two separate entities that may be "persons" under the Code. We presume that the sections of the Code defining terms are to be read consistently and in conjunction with each other.

5. The term successor business is defined broadly to include "any corporation ... which by way of any kind of acquisition transaction acquires all, or part, of the assets of another corporation...." 32 A.L.R.4th 196.

6. We have renumbered Appellants' issues two and three for purposes of clarity in our disposition.

* * *

(3) remove a nonsuit[.]

Pa.R.C.P. 227.1(a) (emphasis added). Such post-trial motion must be filed within 10 days after notice of nonsuit. Pa.R.C.P. 227.1(c)(2).

¶ 7 The note to Pa.R.C.P. 227.1(c) states that a motion for post-trial relief may be filed following a trial by jury, a trial by a judge without a jury in an action at law pursuant to Rule 1038 or a trial by a judge without a jury in an action in equity. Logically, **post-trial** motions may not be filed to orders disposing of **pre**-trial motions (i.e., orders disposing of preliminary objections, motions for summary judgment, motions relating to discovery) or motions relating to proceedings not constituting a trial. Presently, the trial court's entry of nonsuit was performed in response to either the Appellees' or the court's motion prior to any trial. Therefore, we do not deem it either necessary or proper to require Appellants to file a post-trial motion to remove the nonsuit for failure to appear for trial when, in fact, no trial had ever commenced.[7] *Cf. Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 664 A.2d 159, 161 (1995) (where court granted **compulsory** nonsuit **at the conclusion of plaintiffs' case** after opposing counsel orally moved for nonsuit pursuant to Rule 230.1, appellant properly filed notice of appeal from order denying motion to remove the compulsory nonsuit in accordance with 227.1(c) post-trial motion practice).

¶ 8 We also note that the nonsuit was granted with respect to the remaining **individual** Appellees in the case; the nonsuit was not entered in relation to any claims Appellants had against Schall # 2. For this reason, we are not precluded from reviewing whether the trial court properly granted summary judgment with regard to Schall # 2, as this order did not become appealable until final judgment disposing of all claims and parties was entered in this case. *See Jobe v. W.P. Metz Ref.*, 445 Pa.Super. 76, 664 A.2d 1015 (1995) (in multi-defendant litigation, where motions for summary judgment of various defendants were granted on a piecemeal basis, order dismissing final defendant made all of the previous orders final and appealable pursuant to Pa.R.A.P. 341(b)(1)).

¶ 9 Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

¶ 10 Appellants first claim that the Bankruptcy Court improperly discharged Schall # 1's debt under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

¶ 11 Pursuant to section 727 of the Code, a court shall not grant a debtor discharge unless the debtor is an individual. 11 U.S.C § 727(a)(1). While the term "individual" is not defined in the Bankruptcy Code,[8] courts have held that partnerships and corporations may not discharge their debt in Chapter 7 liquidation proceedings. *See In re Good-*

---

7. Additional support for the conclusion that it is not mandatory that appellants file a motion to remove the nonsuit in the instant case is found in the explanatory comment to Pa.R.C.P. 218, which states:

    If the court enters a nonsuit or a judgment of non pros or dismisses an appeal and there exists a sufficient excuse, the aggrieved party **may** present the excuse through a motion to remove the nonsuit or a petition to open the judgment or reinstate the appeal. The petition or post-trial procedure will result in a record which will enable an appellate court to review the trial court's action to determine if there has been an abuse of discretion.

    Pa.R.C.P. 218, Explanatory Comment 1993 (emphasis added).

8. *See supra* text accompanying note 5.

*man,* 873 F.2d 598 (2d Cir.1989); *N.L.R.B. v. Better Building Supply Corp,* 837 F.2d 377 (9th Cir.1988). *See also Palmer v. First National Bank of Kingman,* 10 Kan.App.2d 84, 692 P.2d 386, 390 (1984) ("[c]orporate debts are thus 'excepted' from discharge" under Chapter 7 bankruptcy proceedings).

¶ 12   A corporation, however, may be liquidated under Chapter 7. That is, the corporation may turn to cash all of its assets for distribution to creditors. Liquidation, therefore, seems to have the same effect as discharge to those creditors whose debts have not been satisfied upon liquidation. Realistically, after liquidation proceedings there is no longer a corporate entity for purposes of satisfying an outstanding judgment. Accordingly, even if the bankruptcy court permitted Schall # 1's corporate debts to be discharged under Chapter 7, Appellants would have been unable to collect on the wrongful death/survivorship verdicts from a defunct, liquidated corporation. *See In re Federal Insulation Development Corporation,* 14 B.R. 362, 364 (Bkrtcy S.D.Ohio 1981) ("under Chapter Seven, the debts of a corporation are not discharged[;] [i]nstead the corporation becomes defunct and the issue of dischargeability irrelevant.").

¶ 13   Despite the fact that the bankruptcy court may have improperly ordered Schall # 1's corporate debts discharged under Chapter 7, the more proper focus in this appeal is upon the issues underlying Schall # 2 and its potential liability to Appellants.

¶ 14   Appellants next assert that Schall # 2 was established as an "alter-ego" or successor corporation to Schall # 1 in order to continue Schall # 1's business, but avoid Schall # 1's liabilities and debts.

¶ 15   It is a general rule that when a corporation sells all of its assets to another corporation, the latter is not responsible for the seller corporation's debts or liabilities. *Royal Ins. Co. v. Smatco Indus. Inc.,* 201 B.R. 755 (E.D.La.1996). There are, however, exceptions to this general rule, such as where the purchasing corporation expressly or impliedly agrees to assume the seller corporation's obligations, where the purchasing corporation is merely a continuation of the selling corporation, or where the transaction is entered into to escape the seller corporation's liability. In such instances a successor corporation cannot avoid liability. *Better Building Supply Corp., supra* ; 32 A.L.R.4th 196. In other words, where the successor corporation has been established to merely "continue" the former corporation's operations or to escape the former corporation's liability, our courts have imposed "successor corporation liability."

¶ 16   In *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48 (7th Cir.1995), a furniture company ("first company") declared Chapter 7 bankruptcy. As part of the Chapter 7 liquidation proceedings, the company's truck drivers' union pension fund ("the Fund") unsuccessfully attempted to collect outstanding union pension fund and employee retirement benefits from the company. *Id.* at 49. The company entered into a debt compromise agreement with a secured lender and turned the interest over to another company ("new company") which foreclosed on the collateral. *Id.* No company assets remained to satisfy creditors and the bankruptcy case was finally closed. *Id.* The Fund later sued the new company under the theory of successor liability. *Id.* The trial court granted the new company's motion to dismiss the Fund's complaint finding that to allow the suit to proceed would "frustrate the primacy of the Bankruptcy Code." *Id.* at 50.

¶ 17   On appeal, the United States Court of Appeals for the 7th Circuit did not agree; the federal appeals court reversed the trial court's grant of the new company's motion to dismiss finding that the Fund was not precluded from making a viable claim of successor liability against the new company in its separate suit. *Id.* at 51. Astutely, the court noted:

What the imposition of successor liability would accomplish, and what the district court objected to, would be a second opportunity for a creditor to recover on liabilities after coming away from the bankruptcy proceeding empty[-]handed. But a **second chance is precisely the point of successor liability, and it is not clear**

why an intervening bankruptcy proceeding, in particular, should have a *per se* preclusive effect on the creditor's chances.

*Id.* (emphasis added).

¶ 18  In order to determine whether a successor corporation has been established as an "alter ego" of a former corporation and, thus, may be held liable for the former corporation's debts and liabilities, we must analyze the following factors with respect to the two entities:

> (1) centralized control of labor relations[;] (2) common management[;] (3) interrelations of operations[;] and (4) common ownership and financial control.

*Better Building Supply Corp.*, 837 F.2d at 378. A related theory of successor liability in the context of products liability and criminal corrupt organization cases has been upheld in our Commonwealth. *See Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981) (in strict liability case, court reiterated that where there is a common identity of officers, directors and stock between selling and purchasing corporations, and only one corporation after the transfer, an exception to the general rule of nonliability for the successor/transferee corporation is met); *see also Commonwealth v. Lavelle*, 382 Pa.Super 356, 555 A.2d 218 (1989) (*de facto* successor corporation was held criminally liable for acts of its predecessor-in-interest corporation in light of evidence establishing successor corporation's continuity of management, continuity of personnel, and continuity of physical location, assets and general business operations of prior corporation).

¶ 19  In the present case, the only evidence we have with regard to the management and ownership of Schall # 1 is found in Schall # 1's Chapter 7 application for bankruptcy. The bankruptcy application lists that: Edwin A. Schall was Schall # 1's president; Delores M. Schall was the secretary and treasurer of Schall # 1; and Dennis B.

Schall, Sr., was the vice-president of Schall # 1. These three officers and directors were also the sole shareholders of the now bankrupt corporation. In the present case, however, there is absolutely no evidence with regard to the control, management, operations, ownership or financial control of Schall # 2. In fact, Appellees' answer to Appellants' complaint states that "the answering [Appellees] believe and, therefore, aver that no such corporate entity[, Schall # 2,] exists" and that "answering [Appellees] have no knowledge or information or belief as to whether [Schall # 2] was incorporated on April 23, 1990, in the Commonwealth of Pennsylvania." Accordingly, we are without sufficient facts of record to make a determination of whether Schall # 2 is the alter-ego corporation of Schall # 1. *Better Building Supply Corp, supra.*

¶ 20  We find it imperative to note that the trial court was likewise presented with a dearth of evidence upon which to make its determination granting summary judgment in Schall # 2's favor. In coming to its ruling, the court stated:

> The complaint on the theory of corporate succession to liability of a bankrupt corporation must be dismissed as against the non-bankrupt corporate defendant. As Judge Panella found in his final, binding order, this court cannot revive a claim that a corporation is liable for a debt of another corporation that has been discharged in bankruptcy.

Other than this blanket statement relying upon another trial judge's conclusions, the court offers no reasons to demonstrate that there existed no genuine issue of material fact and that Schall # 2 was entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In fact, if Schall # 2 was indeed established as an alter ego corporation to continue Schall # 1's business in an attempt to avoid Schall # 1's debts and liabilities, Schall # 2 may well be liable under the theory of successor liability.[9] *Royal Insurance Co., supra.* To

---

9. We also note that Appellants could have conceivably attempted to collect their judgments against Schall # 1 or Schall # 1's property outside the bankruptcy process because "[t]he failure of a creditor to file a claim as to a debt which is excepted from bankruptcy discharge does not bar the creditor from proceeding against the

ignore this issue may be interpreted as a silent judicial sanction for corporations to form successor entities in an effort to shelter their financial responsibilities and debts. *Lavelle, supra.* This, we cannot uphold. Accordingly, we must reverse the order granting summary judgment in favor of Schall # 2.[10]

¶ 21 Order granting summary judgment reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.[11]

debtor or the debtor's property." *Palmer,* 692 P.2d at 391.

10. Presently, we are compelled to note that the trial court has failed to file a separate opinion addressing the issues raised by the appellants in their Pa.R.A.P. 1925(b) Statement of Matter Complained of on Appeal and in their appellate briefs. Instead, the trial court relies upon its December 15, 1997, opinion in support of granting Schall # 2's motion for summary judgment, stating in its order to this court that "[n]o additional statement of reasons on our part is required." While Pa.R.A.P. 1925(a) allows a trial court to rely on a ruling or determination in the record that explains the reasons for entering the order which is appealed, the trial court's reliance on its December 15, 1997 opinion is neither responsive to Appellants' issues on appeal nor instructive with regard to the circumstances surrounding the entry of nonsuit. Lack of an adequate opinion has prevented this court from conducting appellate review; we have no record of any proceedings between the parties and cannot analyze the specialized bankruptcy issues involved in this case on a cold record.

11. We also do not find the fact that Appellants did not appeal the order discontinuing the Schall # 1 cases fatal to the claims underlying the case on appeal. At the time the court discontinued the Schall # 1 cases, the trial court had not yet granted Schall # 2 summary judgment. Accordingly, the issues regarding the improper grant of summary judgment due to Schall # 2's potential successor liability were not yet ripe and, therefore, could not have been addressed in an appeal from the continuance of the predecessor corporation's cases. Finally, the fact that the Schall # 1 cases were discontinued based upon an improper discharge of Schall # 1's corporate debt under Chapter 7 further dilutes Appellees' argument of waiver for failure to appeal the discontinuance order.