In re the WHITE MOTOR CREDIT CORP., et al., Debtors.

VOLVO WHITE TRUCK CORPORATION,
Plaintiff,

v.

CHAMBERSBURG BEVERAGE, INC., et al., Defendants.

Bankruptcy Nos. B80–03360, B80–03361, B80–03362, B80–03364, B80–03365.
Adv. No. B87–0081.

United States Bankruptcy Court,
N.D. Ohio, E.D.

July 22, 1987.

---

Edward R. Brown, Arter & Hadden, Cleveland, Ohio, for plaintiff.

G. Christopher Meyer, John C. Parks, E. Thomas Moroney, Jr., Squire, Sanders & Dempsey, Cleveland, Ohio, for Grigsby.

Brian A. Bash, Kahn, Kleinman, Yanowitz & Arnson, Co., L.P.A., Cleveland, Ohio, for Chambersburg, Gillespies & C. Earl Brown.

John T. Grigsby, Jr., Boca Raton, Fla., Disposition Assets Trustee.

James Thomas, II, Thomas & Thomas, James Nealon, II, James Goldsmith, Caldwell, Clouser & Krearns, Harrisburg, Pa., for defendants.

## MEMORANDUM OF DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

Before the court is the complaint of Volvo White Truck Corporation for declaratory and injunctive relief. Defendants Chambersburg Beverage, Inc., Steven M. and Bobbie H. Gillespie, and C. Earl Brown, Inc. filed motions to dismiss. John T. Grigsby, Jr., Disposition Assets Trustee of the White Motor Reorganization Trust, intervened as a party-defendant. Due to prompt scheduling of this matter, the parties agreed that Volvo's motion for preliminary relief is unnecessary.

On August 20, 1981, this Court entered an order authorizing sale of White Motor assets to Volvo. Defendants subsequently filed actions in state court alleging Volvo's successor liability. At issue, therefore, is the intent of the order of sale and its effect on the state court actions. Relevant facts are as follows:

The two cases in question were filed on August 22, 1983, and are currently pending in Pennsylvania State Court. They allege that Volvo is successor in liability to the reorganized debtor, White Motor Corp. These suits arise from an accident on September 3, 1981, in which Steven Gillespie, a Chambersburg employee, was injured while driving a truck manufactured by White Motor. Gillespies seek judgment of $15,671.50 in special damages and in excess of $10,-000.00 in other damages and costs against White Motor, Volvo and Brown. Chambersburg sued White Motor, Volvo and Brown to recover $26,000.00 for property loss, $236,431.34 in indemnity and contribution, plus punitive damages in excess of $10,000.00. Brown, a White Motor distributor, filed cross-claims against Volvo for indemnity in both actions.

On September 4, 1980, White Motor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On June 9, 1981, during the reorganization proceedings, A.B. Volvo, Volvo's parent corporation, agreed to purchase substantially all of White Motor's remaining truck business

assets. By memorandum order of August 13, 1981, the Court determined the sale was appropriate outside the context of a plan of reorganization. The August 20, 1981 order approved the purchase agreement "in all respects".

Orders were entered giving notice of the hearing to approve the purchase agreement. By order of July 27, 1981, known claimants, shareholders, debenture holders and persons requesting notice were mailed notice of the hearing. Additionally, copies of the notice were published in "The Wall Street Journal" (national edition) and in "The New York Times". Defendants received no actual notice of the hearing since the accident from which their actions arose had not yet occurred and Defendants were unknown.

The purchase agreement involved the sale of truck assets, and by its terms, Volvo assumed specific obligations. The agreement provided, however, that "Volvo will not under any circumstances assume any liabilities of White (i) for personal injury or property damage because of alleged negligence or breach of warranty or under any other theory of product liability or (ii) to pay damages (other than the purchase price of goods or services provided to White) by reason of any breach of any obligations or any other acts or omissions of White." Purchase Agreement, Article II, Section 2.02. Despite this provision, thirty-five lawsuits were filed against Volvo in nineteen states, twenty of which are still pending. These suits allege successor liability resulting from Volvo's purchase of the White Motor truck assets.

The purchase price of the truck assets was based on book value to be reflected in a closing date statement, less adjustments for assumed liabilities and start-up costs. The closing statement was never prepared, however, and a supplemental agreement of June 15, 1983 was negotiated instead. This agreement provides, inter alia, for Volvo's delivering a Product Liability Indemnification Agreement whereby Volvo assumed White's product liability for accidents occurring May 1, 1983 through December 31, 1992, involving vehicles assembled prior to September 1, 1981. The supplemental agreement was approved by court order of June 29, 1983.

White Motor's modified plan of reorganization was confirmed on November 18, 1983. Through its terms, the Disposition Assets Trust was created to effect plan distributions. By order of August 1, 1983, this Court scheduled hearing for approval of the disclosure statement and fixed August 30, 1983 as the last day to file any and all claims against White Motor which had not been previously barred. Having received this notice, on August 25, 1983 Chambersburg and Gillespie filed claims for amounts requested in their state court actions. If liability is established in the state proceedings, these claims will be paid under the plan. On confirmation, White Motor was discharged "from any debt that arose before the confirmation date ..." Plan of Reorganization, Article VI, Section 6.1.

## I. JURISDICTION

Volvo seeks determination that the order approving the purchase agreement transferred assets free and clear of Defendants' claims asserted in state court. Injunctive relief is also sought. Defendants seek dismissal of Volvo's complaint based on lack of subject matter jurisdiction. Alternatively, abstention is requested.

This Court is empowered to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105(a). Included, is authority to interpret and clarify prior orders. "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled." *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). This ancillary jurisdiction to interpret and enforce prior orders includes purchasers' actions for declaratory and injunctive relief to enforce orders of sale. *Whitehead and Kales Co. v. Dempster,* (In re Wiltse Bros. Corp.), 361 F.2d

295 (6th Cir.1966). This Court's jurisdiction to approve the purchase agreement is undisputed. Therefore, the Court has jurisdiction over this ancillary adversary proceeding seeking effectuation of that order. Moreover, jurisdiction may be exercised irrespective of an independent jurisdictional basis. *Local Loan.* As a proceeding ancillary to an order of sale, defined as a core proceeding under Section 157(b)(2)(N) of Title 28, the proceeding at bar is within the court's core jurisdiction. *Canadian Shield Financial Corp. v. Estate of Deutscher,* (In re Vincent), 68 B.R. 865 (Bankr.M.D. Tenn.1987).

■ The interests of justice and comity favor resolution of the within cause by this Court. This determination, hopefully, will avoid duplicative litigation in various forums and should avoid inconsistent rulings. Abstention under Section 1334(c)(1) of Title 28 is, therefore, inappropriate. *Citibank, N.A. v. White Motor Corp.,* 761 F.2d 270 (6th Cir.1985).

## II. SALES FREE AND CLEAR

The court's authority to sell free and clear of Defendants' claims, and the effect of the White Motor sale are in dispute. A summary of the respective arguments may be helpful at this juncture.

Volvo maintains the sale of White's assets was free and clear of Defendants' state court claims because federal bankruptcy law precludes imposition of successor liability on purchasers in bankruptcy sales. Under this theory, the non-existence of Defendants' claims on the date of sale is immaterial. Alternatively, it is argued that as a matter of federal law the claims did in fact exist on the sale date irrespective of their status under state tort law. Although the Trustee is a party-defendant, his arguments interpreting the sale and applicable law support Volvo's. Defendants argue that the court had no authority to sell free and clear of their claims which were not in existence on the sale date. Further, they argue the sale by its terms was not free and clear of their claims for successor liability.

### A. LEGAL BASIS

■ Section 363(f) provides for sales "free and clear of any interest in such property of an entity other than the estate ..." 11 U.S.C. § 363(f). This section authorizes sales free and clear of specific interests in the property being sold; liens, for example. See H.Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), U.S.Code Cong & Admin.News 1978, p. 5787. General unsecured claimants including tort claimants, have no specific interest in a debtor's property. Therefore, section 363 is inapplicable for sales free and clear of such claims. See *Rubinstein v. Alaska Pacific Consortium* (In re New England Fish Co.), 19 B.R. 323 (Bankr.W.D.Wash.1982). But see *American Living Systems v. Bonapfel* (In re All American of Ashburn Inc.), 56 B.R. 186 (Bankr.N.D.Ga.1986).

■ Absence of specific statutory authority to sell free and clear poses no impediment. This authority is implicit in the court's general equitable powers and in its duty to distribute debtor's assets and determine controversies thereto. *Van Huffel v. Harkelrode,* 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931). Authority to conduct such sales is within the court's equitable powers when necessary to carry out the provisions of Title 11. 11 U.S.C. § 105(a). The sale in question was in fact conducted under the equitable provisions of Section 105. See Memorandum order of August 13, 1981 reported at 14 B.R. 584, wherein the court determined Section 363 was inappropriate for the sale of substantially all of a debtor's operating assets.

■ The court's power to sell free and clear is limited by its authority to affect claims. *Schweitzer v. Consolidated Rail Corp.,* 65 B.R. 794 (E.D.Pa.1986). Its equitable power to sell free and clear must be interpreted consistent with its power to discharge claims under a plan of reorganization. Section 1141 of the Code delineates the effects of confirmation. Section 1141(a) setsforth those who are bound by plan confirmation. Section 1141(c) states that after confirmation "the property dealt with by the plan is free and clear of all

claims and interests of creditors, equity security holders and of general partners in the debtor." Section 1141(d) "discharges the debtor from any debt that arose before the date of such confirmation." A sale conducted through the court's equitable powers can provide the debtor the same degree of relief effected by a sale in a plan of reorganization and, therefore, can affect claims arising prior to confirmation. *Mooney Aircraft, Inc. v. Foster*, 730 F.2d 367 (5th Cir.1984), cited by Defendants, is not at variance with this proposition. In *Mooney*, the court noted a sale free and clear was ineffective against claims non-existent on the date of sale. The court, however, was concerned with a liquidation sale under Chapter VII of the Bankruptcy Act of July 1, 1898 whereby a court had jurisdiction to discharge pre-petition claims. *Mooney* clearly was neither addressing the issue of claims under the current code nor a court's authority to effect a discharge in a Chapter 11 reorganization.

In the within cause, the accident giving rise to Defendants' state actions occurred after the sale was authorized. The parties dispute the statutory limitations of tort claims under the Bankruptcy Code. Volvo cites authority suggesting federal law controls the existence of claims and that a tort claim for bankruptcy purposes exists when the negligent or injurious act occurs, not when the injury is sustained. See *Roach v. Edge*, 60 B.R. 690 (Bankr.M.D.Tenn.1986). Defendants maintain no claim exists under tort law until there is an identifiable injury. Hence, Defendants argue no claim for bankruptcy purposes exists until there is a legal relationship between the tort-feasor and the tort victim and, thus, there is no claim until a tort has occurred. See *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936 (3d Cir.1985). As noted, the issue regarding the status of unaccrued tort claims is unsettled. *Bibler, The Status of Unaccrued Tort Claims In Chapter 11 Bankruptcy Proceedings*, 61 The American Bankruptcy Law Journal 145 (Spring, 1987). If resolution of the issue were deemed necessary herein, this Court favors limited construction of tort claims based on state law concepts. Non-existence of De-

fendants' claims on the date of sale, however, is irrelevant because the pertinent consideration previously noted is whether the claims are within the scope of White Motor's reorganization.

Under either of the above definitions, the tort claims arose prior to plan confirmation and are within the scope of Debtor's discharge. Defendant Brown's claims are based on indemnity and contribution and, obviously, differ from the tort claims. Similar controversy exists regarding when these claims arise for bankruptcy purposes. Recent case law suggests Brown's claims arose, at the latest, when the primary action which might result in the right to indemnity is commenced. *Avellino and Bienes v. M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). In the present cause, the primary action was commenced pre-confirmation on August 22, 1983. Brown's claims, therefore, arose pre-confirmation.

For reasons setforth above, the sale was free and clear of all Defendants' claims. To the extent these claims are properly asserted, they will be addressed and considered in accordance with the plan of reorganization.

## B. NOTICE

Defendants challenge the adequacy of their notice of the hearing of sale. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). As previously discussed, Defendants had no specific interest in the property being sold. Moreover, they had no known claims against White Motor on the date of sale. To the extent Defendants were parties in interest to the sale, notice in publications of national circulation was reasonably calculated to inform them of

the pendency of sale and thus complied with requirements of due process.

## III. PRE–EMPTION

A) Volvo asseverates that federal bankruptcy law pre-empts state law's imposing successor liability on purchasers of estate assets. The parties argue the relative merits of successor liability, but the issue to be decided is whether state successor liability law is pre-empted by federal law *to the extent the claims underlying the successor's liability have been discharged under a plan of reorganization.*

 Federal pre-emption of state law must be explicit or compelled due to an unavoidable conflict between the federal and state law. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3d Cir.1984). Where it is contended that federal law confers a power not limitable by state law, the Supremacy Clause requires determining whether the state law frustrates the full objective of the federal legislation. U.S. Const, Art. VI, cl. 2. The purposes of the federal and state law must be construed to determine whether they are constitutionally in conflict. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

Traditional concepts of corporate successor non-liability have been held inapplicable in product liability cases. See generally 2 Dooley, *Modern Tort Law*, § 32.64.25 (1983). Under various theories purchasers of corporate assets have been held liable for injuries caused by units manufactured and distributed by their predecessors. Pennsylvania law, the law of the state where Defendants' actions are pending, is discussed for illustration. Pennsylvania law of successor liability has been authoritatively construed in *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106, 290 Pa.Super. 15, (Pa.Super.Ct.1981). In *Dawejko* the court adopted the product-line exception to the general rule of non-liability under which a purchaser of corporate assets who undertakes essentially the same manufacturing operation as the seller is strictly liable for injuries caused by units manufactured and distributed by its predecessor.

Volvo was held liable under this theory in *Conway v. White Trucks*, 639 F.Supp. 160 (M.D.Pa.1986). The purpose underlying successor liability is to protect defenseless victims of manufacturer's defects and spread the cost of compensation throughout society. *Dawejko.* Successor liability is imposed in part as a burden attaching to the manufacturer's good will enjoyed by the successor. *Dawejko.* Dawejko adopted the reasoning of *Ramirez v. Amsted Industries, Inc.*, 431 A.2d 811, 86 N.J. 332 (N.J.Sup.Ct.1981) which noted that the true worth of assets must reflect this potential liability. In sum, successor liability is employed to prevent avoiding product liability by a sale of assets.

A primary purpose of the Bankruptcy Code is to grant debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The specific purpose of Chapter 11 reorganization is to give the debtor "a breathing spell so that it can adjust and compromise its debts." *State of Ohio v. Mansfield Tire and Rubber Co.*, 660 F.2d 1108, 1113 (6th Cir.1981). As stated, supra, section 1141 setsforth the effects of confirmation of a plan of reorganization. A debtor's fresh start is effected by the discharge of all debts arising prior to confirmation. 11 U.S.C. § 1141(d). Moreover, Section 1141(c) states that after confirmation, "the property dealt with by the plan is free and clear of all claims and interests of creditors ..." Plan confirmation, therefore, adjusts and discharges corporate debt and frees the debtor's property therefrom. Reorganization is a vehicle to finalize resolution of debt.

 The liability which state law imposes through successor liability is that of the manufacturer. The federal purpose of final resolution and discharge of corporate debt is clearly compromised by imposing successor liability on purchasers of assets when the underlying liability has been discharged under a plan of reorganization. Moreover, successor liability is precluded

by Section 1141(c) which specifically frees debtor's property from creditors' claims. Successor liability in these circumstances has, therefore, been pre-empted by the Bankruptcy Code.

The effects of successor liability in the context of a corporate reorganization preclude its imposition. The successor liability specter would chill and deleteriously affect sales of corporate assets, forcing debtors to accept less on sales to compensate for this potential liability. This negative effect on sales would only benefit product liability claimants, thereby subverting specific statutory priorities established by the Bankruptcy Code. See 11 U.S.C. §§ 507 and 1129(a)(9). This result precludes successor liability imposition. See *Forde v. Kee-Lox Manufacturing Co.*, 437 F.Supp. 631 (W.D. N.Y.1977), aff'd on other grounds, 584 F.2d 4 (2d Cir.1978); *American Living Systems v. Bonapfel* (In re All American of Ashburn, Inc.), 56 B.R. 186 (Bankr.N.D.Ga. 1986); and *Rubinstein v. Alaska Pacific Consortium* (In re New England Fish Co.), 19 B.R. 323 (Bankr.W.D.Wash.1982).

Defendants' arguments concerning administrative priority status of post-petition claims and a successor in liability's entitlement to subrogation are unfounded. Post-petition claims based on pre-petition activity are not intrinsically administrative expenses. Elevating product liability claims in priority through successor liability subverts the Code established priorities. Moreover, the issue to be decided is whether a successor can be held liable in light of the purposes of the Code. To state that a successor held liable would be entitled to subrogation merely circumvents that issue.

■ B) Article II, Section 2.02 of the parties' purchase agreement states Volvo will not assume "any liabilities of White (i) for personal injury or property damage because of alleged negligence or breach of warranty or under any other theory of product liability ..." The terms of the order approving this agreement are unambiguous regarding preclusion of successor liability. The order of sale approved the parties' agreement "in all respects". Successor liability's preclusion by the language in the purchase agreement is further corroborated by Volvo's subsequent assumption of a portion of the liability in the supplemental agreement.

## IV. EQUITABLE ESTOPPEL AND WAIVER

■ Equitable estoppel and waiver premised on Volvo's delay in raising the preclusive effect of the order of sale have been asserted. Circumstances negate their application. Estoppel is an equitable doctrine invoked to avoid injustice. Detrimental reliance is a necessary element. Thus, a party claiming estoppel must have reasonably relied on its adversary's conduct and changed positions to its detriment. *Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The record reflects no detrimental reliance by Defendants. Volvo denied liability in the Pennsylvania cases and Defendants' actions in response have not been to their detriment. Waiver ordinarily defined as "an intentional relinquishment or abandonment of a known right or privilege" is equally inapplicable. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Mere reference to Volvo's delay in asserting effect of the sale does not constitute proof of intent to waive that right.

## CONCLUSION

1) This Court has subject matter jurisdiction of Volvo's complaint for declaratory and injunctive relief. Abstention under Section 1334(c)(1) of Title 28 is inappropriate under the circumstances. Defendants' motions to dismiss are, therefore, denied.

2) The August 20, 1981 order approving the sale of White Motor's truck assets to Volvo, by its terms, precludes imposition of successor liability on Volvo, since the claims underlying this liability are discharged in White Motor's confirmed plan of reorganization. Defendants, therefore, are permanently enjoined from continuing any action against Volvo resulting from the September 3, 1981 accident, in state court or elsewhere. Defendants are specifically enjoined from continued prosecution of

their pending state court actions against Volvo relating to that accident.