288 N.J. Super. 479 (1996)
672 A.2d 1177
SAMUEL P. ALLOWAY, III, AND NEW HAMPSHIRE INSURANCE CO., PLAINTIFFS-APPELLANTS,
v.
GENERAL MARINE INDUSTRIES, L.P., DEFENDANT-RESPONDENT, AND MULLICA RIVER BOAT BASIN, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 1996.
Decided March 8, 1996.
*480 Before Judges KING, KLEINER and HUMPHREYS.
Brandt Haughey Penberthy Lewis & Hyland, attorneys for appellant Samuel P. Alloway, III; Law Offices of Sanford F. *481 Schmidt, attorney for appellant New Hampshire Insurance Company; Suzanne E. Bragg, on the brief).
Mesirov Gelman Jaffe Cramer & Jamieson, attorneys for respondent General Marine Industries, L.P. (John C. Penberthy, III, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiffs Samuel P. Alloway, III, and New Hampshire Insurance Co. appeal from an order dismissing their complaint filed against defendant General Marine Industries, L.P. The motion judge concluded that plaintiffs' products liability claim for economic loss was not cognizable under New Jersey law and that plaintiffs' claim was barred by 11 U.S.C.A. § 363 of the Bankruptcy Code.

I
In October 1989, Glasstream Boats, Inc., (Glasstream) filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Georgia. On March 30, 1990, under § 363 of the Bankruptcy Code, Glasstream sold its assets to GAC Partners, L.P. GAC Partners, L.P., is the former name of defendant, General Marine Industries, L.P. (GMI).[1]
On July 14, 1990, Alloway purchased a Century Grande XL boat from defendant retailer Mullica River Boat Basin (Mullica) for $61,070. Century Boats (Century), a division of Glasstream, manufactured the boat. Mullica delivered the boat to Alloway on approximately July 26, 1990. On July 25, 1990, plaintiff, New Hampshire Insurance Co. (New Hampshire), issued a comprehensive *482 insurance policy to Alloway covering the boat. The boat sank on approximately October 15, 1990.
Alloway paid his deductible of $2,490 and New Hampshire paid $40,106.63 to repair the boat, as required under the insurance policy. After repairing the boat, Alloway received $38,770 for the boat as a trade-in for the purchase of a new boat.
In his original complaint, Alloway asserted three theories of recovery. In count one, Alloway alleged that he purchased, from Mullica, a boat with a warranty that provided for "repair or replacement of any part found to be defective." He alleged that Mullica was "unable and/or unwilling" to honor the warranty, and that he suffered a resulting economic loss. In count two, he alleged that Century manufactured a defective boat and that as a result of the defect, he suffered an economic loss. In count three, Alloway alleged that Glasstream "negligently manufactured and inspected" the boat and Mullica "failed to identify the defect in [the boat] in an inspection completed prior to the delivery" of the boat to plaintiff. Plaintiff Alloway alleges economic loss as a result of the negligence.[2]
After Alloway filed his complaint, he assigned all of his claims against defendants to plaintiff New Hampshire, excluding his claim for loss in value of the boat. New Hampshire, as an assignee, filed an amended complaint and asserted claims against defendants by repeating the allegations originally asserted by Alloway in counts two and three of the original complaint.
Alloway demanded as damages the "difference in value between the price paid for the boat and the market value of the boat in its defective condition," the insurance deductible, attorney's fees and costs. New Hampshire demanded $40,106.63, the amount it paid to repair the boat.
*483 GMI moved to dismiss plaintiffs' complaints, arguing that plaintiffs did not have a products liability or Uniform Commercial Code (UCC) warranty claim for economic loss and that plaintiffs' suit was barred by 11 U.S.C.A. § 363 (§ 363), a section of the United States Bankruptcy Code (Code). After oral argument, the motion judge granted GMI's motion, holding that plaintiffs' only remedy was for breach of warranty under the UCC, and that plaintiffs' products liability and UCC warranty claims were barred by § 363.
The motion judge dismissed plaintiffs' products liability and negligence claims, stating:
I conclude that successor liability under the Ramirez doctrine ... does not apply to consumer buyers suing for economic loss only to a product which they have purchased.... Alloway ... cannot reach GMI on the facts here.... [T]he UCC clearly governs this relationship.... [B]ut for the bankruptcy of Glasstream, Alloway could have reached Glasstream and its Century Boat division, but bankruptcy, in fact, did intervene. GMI ... bought the assets out of bankruptcy subject to an order . .. making the purchase free and clear of all claims. .. . [I]n this instance, that purchase of assets simply does not make [GMI] liable for all of Glasstream's old customers on their various warranty claims for economic loss.
... [D]espite the claims of negligence ... being made here, what we have is essentially a contract claim, a warranty claim based and sounding in the provisions of the Uniform Commercial Code in which I believe buyers bare [sic] the risk that sellers [may be] ... near ... going out of business or going bankrupt....[3]
In reaching this conclusion, the judge either did not consider or declined to follow Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965) (holding that a consumer can institute a products liability suit for economic loss to the product). Instead, he relied primarily on Spring Motors v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985) (holding that a commercial buyer of *484 defective goods cannot maintain a strict liability or negligence suit for economic loss to the product, as the remedy is a breach of warranty suit under the UCC), and D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 619 A.2d 689 (App.Div. 1993) (extending Spring Motors to consumer transactions and holding that consumers cannot institute a products liability suit for direct economic loss to the product resulting from conduct that constitutes a breach of express or implied warranties because the exclusive remedy is under the UCC). The judge concluded that plaintiffs could not institute a strict liability claim for economic loss, citing D'Angelo, and that the Ramirez successor liability doctrine only applied to personal injury cases.
Plaintiffs argue that: (1) a consumer can assert a products liability claim for economic loss to a product under Santor; (2) a consumer who institutes a products liability claim for economic loss to a product can proceed against the manufacturer's successor under the doctrine established in Ramirez v. Amsted Indust., 86 N.J. 332, 431 A.2d 811 (1981); and (3) a consumer's products liability claim for economic loss against a successor that purchased a bankrupt corporation's assets in a bankruptcy proceeding is not precluded by § 363 of the Bankruptcy Code (Code). We agree and reverse.

II
In Santor, Daniel Santor purchased a carpet which turned out to be defective. 44 N.J. at 55, 207 A.2d 305. He sued the manufacturer (not the distributor) and recovered $1,512, the carpet's lost value. Ibid. We reversed the trial court, stating that "absent personal injury or damage to health consequent upon use of the product ... there is no action in this State on the part of a purchaser of goods for breach of warranty in respect of their quality or fitness for use except as against the party from whom he has purchased them." Id. at 58, 207 A.2d 305 (quoting Santor *485 v. A & M Karagheusian, Inc., 82 N.J. Super. 319, 322, 197 A.2d 589 (App.Div. 1964)).
The Supreme Court reversed, stating:
From the standpoint of principle, we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively-made product has caused personal injury, and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it.... It should make no difference that the defect in the product did not or was not likely to cause harm to the purchaser.
[Id. at 60, 207 A.2d 305.]
The Supreme Court stated that Santor's remedy would be "limited to the loss of value of" the carpet. Id. at 63, 207 A.2d 305. This loss was measured by "the difference between the price paid by plaintiff and the actual market value of the defective carpeting at the time when plaintiff knew or should have known that it was defective." Id. at 68-69, 207 A.2d 305.
In 1985, the Supreme Court declined to extend Santor to cases involving a commercial buyer. Spring Motors, supra, 98 N.J. at 561, 489 A.2d 660. In Spring Motors, a commercial truck company unsuccessfully sued Ford Motor Company for providing trucks with defective transmissions. Ibid. On appeal, we held that under Santor, Spring Motors had a strict liability claim for economic loss. Ibid.
The Supreme Court reversed, holding that a commercial buyer must institute claims for damage to the product itself under the Uniform Commercial Code and that under the UCC, a commercial party could sue another commercial party that was not in privity. Ibid. In ruling that a commercial party could not sue for economic loss under a strict liability theory, the Spring Motors Court made the following determinations: (1) in a commercial transaction, both parties have equal bargaining power and are capable of allocating the risk of the transaction; (2) in enacting the UCC, the Legislature created a "carefully-conceived system of rights and remedies to govern commercial transactions," and permitting Spring Motors to proceed under a tort theory would dislocate *486 provisions of the UCC; and (3) in prior New Jersey cases that permitted commercial parties to recover economic loss, the complaining parties suffered either damage to property other than the product in question or personal injury. Id. at 577-78, 489 A.2d 660.
The Court used these factors to distinguish a commercial transaction from a consumer transaction and refused to permit a commercial party to use a strict liability theory to recover for economic loss. The Spring Motors Court also noted that the UCC imposed barriers to consumer recovery; these include the "notice to a seller of breach of warranty" and the "seller's ability to limit or disclaim liabilities to an innocent purchaser." Id. at 570, 489 A.2d 660.
The Court noted that the California Supreme Court in Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965), refused to follow Santor. Id. at 572, 489 A.2d 660. In Seely, a consumer who purchased a truck for use in his hauling business sued the dealer and manufacturer of the truck for its purchase price and the lost profits he sustained when the truck overturned due to brake failure. The California court ruled "that in the absence of personal injuries or property damage strict liability was inapplicable." Ibid. Spring Motors noted that the concurring and dissenting opinions in Seely still "embraced Santor" and that although Seely has since emerged as representing the majority view, Santor has "attracted the support of a few jurisdictions." Id. at 572, 573, 575, 489 A.2d 660. The Supreme Court also observed that commentators had been critical of Santor. Id. at 574-75, 489 A.2d 660.
However, the Supreme Court in Spring Motors did not overrule Santor. It expressly distinguished the facts in Spring Motors as an action by a commercial plaintiff and specifically concluded, "[W]e need not reconsider the Santor rule that an ultimate consumer may recover in strict liability for direct economic loss." Id. at 575, 489 A.2d 660. With respect to the liability of remote suppliers, the Court reaffirmed its holding in Santor by stating, *487 "In New Jersey ... a consumer may recover direct economic loss in a strict liability action against a remote supplier." Id. at 586, 489 A.2d 660. In a concurring opinion, Justice Handler stated, "The Court's opinion in this case suggests an acceptable narrowing of the breadth of our holding in Santor. It does not, however, serve to displace that decision or to signal a different rule in cases in which the requirements of sound public policy and fairness call for its continued application." Id. at 597, 489 A.2d 660.
Since the Spring Motors decision, both the Supreme Court and this Appellate Division have cited Santor as current law in New Jersey. See, e.g., T. & E. Indust., Inc. v. Safety Light Corp., 123 N.J. 371, 388-89, 587 A.2d 1249 (1991) (citing Santor for the proposition that New Jersey has rejected the principles of caveat emptor and privity of contract in certain transactions); Livingston Bd. of Educ. v. U.S. Gypsum Co., 249 N.J. Super. 498, 501, 592 A.2d 653 (App.Div. 1991) ("We are nevertheless bound by Santor, which the 1985 Spring Motors opinion expressly declined to reconsider.").
In D'Angelo, we addressed a consumer's right to recover economic loss under a strict liability theory. Plaintiff Gennaro D'Angelo purchased a yacht which sank. He sued under strict liability, contract and fraud theories. D'Angelo, supra, 261 N.J. Super. at 685-86, 619 A.2d 689.
In addressing D'Angelo's strict liability claim, we stated that the Spring Motors Court expressly left open the question of whether a consumer buyer must look exclusively to the UCC for direct economic loss. Id. at 687-88, 619 A.2d 689. We interpreted the Spring Motors Court's statement that it need not reconsider the Santor rule as leaving the Court's holding in Santor in question. Id. at 687-88, 619 A.2d 689. We therefore concluded that the consumer buyer's claim for conduct that constitutes a breach of implied or express warranties must be asserted under the UCC. On reevaluation, we now conclude that the panel of this court that decided D'Angelo may have misconstrued the Supreme Court's language in Spring Motors.
*488 Since Santor has not been overruled, we must follow it. If Santor is to be overruled, it should be overruled not by this court, but by the Supreme Court. Moreover, we note that our Legislature's concern with protecting consumers who purchase defective products casts considerable doubt on whether the Legislature intended by its enactment of the UCC to reverse the holding in Santor, which pre-dates the UCC. We discern no legislative intention to limit the rights of consumers in cases such as this in which a consumer bought a new boat which promptly sank due to its defects. We therefore elect not to be guided by D'Angelo in our decision in this case. Cf. Delgozzo v. Kenny, 266 N.J. Super. 169, 182, n. 8, 628 A.2d 1080 (App.Div. 1993) (following but questioning D'Angelo's rule that economic damages find their remedy solely in the UCC). See also William A. Dreier et al., N.J. Products Liability & Toxic Torts Law § 7:2 (1995) (suggesting that the issue has yet to be resolved and requires resolution by the Supreme Court).
Santor is still the law applicable to the consumer purchases and the motion judge erred when he failed or declined to adhere to its holding. We conclude that Alloway as a consumer was permitted to sue under a strict liability theory. Additionally, New Hampshire, as a subrogee of Alloway's claim, is entitled to assert the assigned claim under any theory assertable by its assignor. See Culver v. Insurance Co. of North America, 115 N.J. 451, 458, 559 A.2d 400 (1989) ("the principal rationale behind insurance subrogation [is] that `the insured should be reimbursed for his payment to the insured,'") (quoting Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954)).

III
As noted, the motion judge concluded that "successor liability under the Ramirez doctrine ... does not apply to consumer buyers suing for economic loss only to a product which they have purchased...."
*489 Traditionally, corporate law states that "where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." Conway v. White Trucks, 885 F.2d 90, 93 (3d Cir.1989) (quoting Polius v. Clark Equipment Co., 802 F.2d 75, 77 (3d Cir.1986)). Accord, Ramirez, supra, 86 N.J. at 340, 431 A.2d 811. However, the Court in Ramirez established the following principle of successor liability in product liability cases:
[W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.
[86 N.J. at 358, 431 A.2d 811.]
The Ramirez Court stated that successor liability is appropriate because: (1) the successor corporation destroyed plaintiff's remedies against the original manufacturer by acquiring the original manufacturer's assets; (2) the successor corporation can assume the original manufacturer's "risk spreading role"; and (3) the successor benefits from the continued operation of the original manufacturer's business and "good will" and therefore should assume responsibility for the original manufacturer's defective products. Id. at 349-50, 431 A.2d 811 (quoting Ray v. Alad Corp., 19 Cal.3d 22, 136 Cal. Rptr. 574, 582, 560 P.2d 3, 11 (1977)).
We note that in its analysis of the "risk spreading role," the Ramirez Court relied on Santor:
In this developing field of the law, courts have necessarily been proceeding step by step in their search for a stable principle which can stand on its own base as a permanent part of the substantive law. The quest has found sound expression, we believe, in the doctrine of strict liability in tort. Such doctrine stems from the reality of the relationship between manufacturers of products and the consuming public to whom the products are offered for sale. * * * The obligation of the manufacturer thus becomes what in justice it ought to be-an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The purpose of such liability is to insure that the cost of injuries * * * resulting from the defective products, is borne by the makers of the products who put them in the channels of trade, rather than by the injured or damaged persons who ordinarily are powerless to protect themselves.

*490 [Id. at 350-51, 431 A.2d 811 (quoting Santor, supra, 44 N.J. at 64-65, 207 A.2d 305).]
Defendant contends that the rule of successor corporate liability enunciated in Ramirez is limited to suits by plaintiffs who have suffered personal injuries. We disagree. We note that the exact ruling in Ramirez espoused recovery for "injuries" and did not limit the injury to physical injury. See id. at 358, 431 A.2d 811.
Additionally, we note that in Santor the Court traced the historical basis of its conclusion, citing Henningsen v. Bloomfield Motors Inc., 32 N.J. 358, 161 A.2d 69 (1960).
It is true that most of the discussion in Henningsen centers about the right to recover damages for personal injuries suffered by a person not a party to the contract of sale between the purchaser on the one hand and the dealer or the manufacturer on the other. And it was held that, regardless of privity, the injured person, i.e., the purchaser's wife, could recover against the manufacturer and dealer for breach of an implied warranty of merchantability, which by operation of law became an incident of the sale of the automobile to her husband. But plaintiff says defendants overlook that the suit included a claim by Claus Henningsen against Chrysler Corporation for damage to his car in the mishap which resulted in his wife's injuries. Recovery for such damage was allowed against both dealer and Chrysler Corporation. With respect to the manufacturer, the controlling principle was said to be that when a manufacturer puts a new automobile in the stream of trade and promotes its purchase by the public, an implied warranty that it is reasonably suitable for use as such accompanies it into the hands of the ultimate purchaser from the dealer. 32 N.J., at p. 384[, 161 A.2d 69].
[44 N.J. at 58, 207 A.2d 305.]
Moreover, the Santor Court stated that a consumer's strict liability claim should not depend on whether there was a personal injury. Santor, supra, 44 N.J. at 60, 207 A.2d 305 ("It should make no difference that the defect in the product did not or was not likely to cause harm to the purchaser.") See also John L. McGoldrick and Fredrick Smith, New Jersey Product Liability Laws § 1-6:4.1 at 28 (1994) (There is no "obvious reason to limit the defendant's liability to those cases which involve physical injury since the kind and degree of injury may be merely fortuitous.").
A distinction between personal injury and economic loss in the application of the successor liability doctrine attacks the underlying *491 reasoning of Santor, i.e., it should not matter whether the consumer suffers a personal injury or an economic loss if the manufacturer makes a defective product and places it in the stream of commerce. In either case, the consumer has suffered damages and should be permitted to recover from an entity that purchased the assets of the manufacturer of the defective product. Of course, the consumer must produce evidence to establish that the purchasing corporation should be liable as a successor under Ramirez.
Defendant also argues that because Alloway filed a proof of claim in the Glasstream bankruptcy, it had an adequate remedy against Century and therefore the Ramirez doctrine is inapplicable. That contention was not mentioned by the motion judge in granting defendant's motion to dismiss for failure to state a cause of action, under R. 4:6-2(e). We need not specifically address defendant's contention, as its argument is one which is not encompassed by a motion to dismiss. Under R. 4:6-2(e), the test is "whether a cause of action is `suggested' by the facts." Printing Mart-Morristown v. Sharp Electronics, 116 N.J. 739, 746, 563 A.2d 31 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988)). The court's inquiry "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31. The "reviewing court `searches the complaint in depth and with liberality'" to determine whether a plaintiff has stated a cause of action. Ibid. (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252, 128 A.2d 281 (App.Div. 1957)). Plaintiffs are entitled to all reasonable inferences of fact. Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31.
Clearly, plaintiffs' amended complaint stated a cause of action. Discovery undoubtedly will encompass a detailed exploration of the filing of a proof of claim by Alloway in the bankruptcy court and a determination as to whether Alloway had a realistic opportunity to redress his loss. The facts revealed after discovery *492 may affect the applicability of the principles announced in Ramirez. When the trial court is called upon to decide that issue, it will want to consider Wilkerson v. C.O. Porter Machinery Co., 237 N.J. Super. 282, 567 A.2d 598 (Law Div. 1989) (imposing successor liability under Ramirez in Chapter 11 proceeding) and Goncalves v. Wire Technology & Machinery Co., 253 N.J. Super. 327, 601 A.2d 780 (Law Div. 1991) (adopting Wilkerson to find purchaser of assets of Chapter 7 debtor potentially liable for injuries arising out of defects in product line.) Also pertinent are Bussell v. DeWalt Prods. Corp., 259 N.J. Super. 499 (App.Div. 1992), and Pacius v. Thermtroll Corp., 259 N.J. Super. 51, 611 A.2d 153 (Law Div. 1992). Defendant's argument is one which is more properly raised in a motion for summary judgment and is not one to be used in support of a motion to dismiss for failure to state a cause of action.

IV
In granting defendant's motion, the motion judge made reference to the fact that the bankruptcy sale to GMI was a sale "free and clear of all claims." The motion judge did not fully articulate why that stated fact was relevant. The judge specifically stated:
GMI ... bought [Glasstream] out of bankruptcy subject to an order ... making the purchase free and clear of all claims. In my view, in this instance, that purchase of assets simply does not make it liable for all of Glasstream's old customers on their various warranty claims for economic loss.
We presume that the judge was referencing § 363 of the Bankruptcy Code. Section 363 of the Code provides in part:
(b)(1) The trustee, after notice and hearing, may . .. sell ... other than in the ordinary course of business, property of the estate.
....
(f) The trustee may sell property under subsection (b) ... free and clear of any interest in such property of an entity other than the estate, only if 
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is a bona fide dispute; or

*493 (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
[11 U.S.C.A. § 363(b)(1), (f).]
We initially note that § 363 does not speak of a sale "free and clear of all claims," but refers to a sale "free and clear of any interest in such property...." 11 U.S.C.A. § 363(f). The relevant question is whether § 363(f) applies to plaintiffs' suit predicated on a theory of strict liability. There appears to be authority which would permit plaintiff's claim. See Volvo White Truck Corp. v. Chambersburg Beverage, Inc., 75 B.R. 944, 948 (Bank. N.D.Ohio 1987) ("General unsecured claimants including tort claimants have no specific interest in debtor's property. Therefore, § 363 is inapplicable for sale free and clear of such claims."); Wilkerson, supra, 237 N.J. Super. at 293, 567 A.2d 598 (Law Div. 1989) (An "order under section [363] can only protect the purchaser of ... property against `any interest in such property.' Plaintiff's [product liability suit is not] an interest in the purchased property and [§ 363] does not affect plaintiff's claim.") (citing Volvo White Truck, supra, 75 B.R. at 948). A potential cause of action, a chose in action, is clearly neither an "interest in property" nor a "lien" 11 U.S.C.A. § 363(f)(3). Cf. In re All American of Ashburn, Inc., 56 B.R. 186, 189-90 (Bank.N.D.Ga. 1986), aff'd, 805 F.2d 1515 (11 Cir.1986) (holding that § 363 precludes the application of the successor liability doctrine because person alleging product defect obtains a priority over other claimants in the bankruptcy and imposition of the doctrine would devalue the debtor's assets).
We consider Volvo White Truck, supra, to be most persuasive. A suit against a corporation that purchased a debtor's assets is not a claim against a debtor in a bankruptcy proceeding and therefore does not affect the Code's priority scheme. See, e.g., Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th Cir.1994) (holding that a lawsuit against a corporation that purchased assets from a bankrupt is not a claim against the debtor). We are also persuaded based upon the excellent analysis in Wilkerson, supra, *494 237 N.J. Super. at 298, 567 A.2d 598, that All American is quite distinguishable from the facts in this case.
We conclude that the motion judge erred in granting defendant's motion to dismiss plaintiffs' amended complaint. The order of dismissal is reversed.
NOTES
[1] The record on appeal does not include a copy of the bankruptcy court order or purchase agreement. Defendant states in its brief that the bankruptcy court order provided that GAC did not assume any warranties of Glasstream's assets. We accept that representation as true.
[2] GMI removed plaintiff's complaint to the United States District Court for the District of New Jersey. By successive orders, plaintiffs' complaint was referred to the United States Bankruptcy Court and thereafter was remanded by that court to the Law Division.
[3] After the judge's decision was memorialized, New Hampshire and Mullica's insurer, New Jersey Property-Liability Guaranty Association (NJPLGA), filed in the Law Division a stipulation of dismissal of New Hampshire's subrogation claims against Mullica because NJPLGA was insolvent. Thereafter, plaintiffs and Mullica filed in the Law Division a stipulation of dismissal with prejudice of plaintiffs' complaint against Mullica.

Plaintiffs filed their notice of appeal prematurely, since the filing date preceded the dismissal as to Mullica which converted the order of dismissal into a final judgment. We will consider plaintiffs' notice of appeal as if properly filed.