476 So.2d 1125 (1985)
Tommy BOURQUE, Plaintiff-Appellant,
v.
LEHMANN LATHE, INC., A DIVISION OF SMITH INTERNATIONAL, INC., Defendant-Appellee.
No. 84-1200.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1126 Bernard Duhon, Abbeyville, for plaintiff-appellant.
Joseph Lemoine of Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Frank Dawkins, of Mouton and Assoc., Lafayette, Sally S. Shushan, Pan American Life Center, New Orleans, Fred T. Haas, III, New Iberia, for defendant-appellee.
Patrick Caffery of Caffery, Oubre and Dugas, New Iberia, for defendant-appellant.
Before GUIDRY, LABORDE and KING, JJ.
LABORDE, Judge.
Plaintiff Tommy Bourque appeals the trial judge's dismissal by summary judgment of his action for personal injuries against Lehmann Lathe, Inc. (hereinafter referred to as Lehmann Lathe), a division of defendant Smith International, Inc. We affirm.
In a connected case, we consider the duty of one of Smith International's insurers to defend Smith International in this case. See Bourque v. Lehmann Lathe, Inc., 476 So.2d 1129, (La.App. 3d Cir.1985).
Plaintiff contends that this case presents a novel question for the courts of this state: to what extent can a successor business be held liable for injuries caused by defective products manufactured by its predecessor business entity? Plaintiff claims that Smith International is a "successor corporation" to the firm that manufactured the product which allegedly caused injury to him. Today, we expressly do not set forth any ultimate test of successor firm liability; instead, we narrowly hold that, under the established facts of this case, Smith International is not a "successor" that can be held liable for plaintiff's alleged injuries pursuant to any reasonable test of successor liability.
The established, material facts of this case that entitle defendant Smith International to a dismissal of plaintiff's action as a matter of law, see La.Code Civ.Proc. art. 966, are set forth below in chronological order.
Before 1969, the Lehmann Machine Company (hereinafter referred to as Lehmann Machine) manufactured lathes used primarily by other industries for woodworking. Lehmann Machine went bankrupt and, in 1969, Lehmann Machine was dissolved and all of its assets were sold at public auction pursuant to an order of a federal bankruptcy court. Representatives of Smith International attended the auction of Lehmann Machine's assets in St. Louis. Smith International purchased a small portion of Lehmann Machine's manufacturing equipment at the involuntary bankruptcy auction, and some blueprints, drawings, and spare inventory were also purchased.
Approximately eight years later, Smith International set up its Lathe division and, for the first time, began to manufacture lathes. These lathes are similar to the lathes manufactured by the defunct Lehmann Machine Company. The lathes are sold as "Lehmann lathes," which, according to counsel for Smith International, does not infringe on any rights of or trademarks acquired by Lehmann Machine, because when the latter firm ceased to exist its trade names became available for public use. In any event, we are unconcerned with trademark and related commercial *1127 law; the use of the "Lehmann" trade name is only relevant for present purposes in that it could tend to show that Smith International is using industry goodwill established by Lehmann Machine for Smith International's sales of lathes.
In 1981, plaintiff was allegedly injured while working with a "Lehmann Hollow Spindle Lathe." The lathe that injured plaintiff was manufactured and sold by Lehmann Machine prior to its bankruptcy. Plaintiff contends, and we accept as true for the limited purpose of this appeal, that the lathe was defective within the parameters of Louisiana products liability law and that such defect caused his injury.
The most widely followed rules of successor corporation liability were noted by the United States Supreme Court in Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), a case involving provisions of the National Labor Relations Act (NLRA). Although the Court narrowly considered whether, under the NLRA, a successor corporate employer is bound by the terms of a collective bargaining agreement between its union employees and the predecessor corporate employer, the Court recognized that most jurisdictions impose liability, both in contract and in tort, on a successor corporation under three basic circumstances. As a preface, however, it should be observed that the Court was concerned with voluntary transfers of all of the predecessor's assets to the successor, which represents the situation faced most commonly by other courts. First, the Court said, liability should be imposed when the successor expressly or impliedly agrees to assume the obligations of the predecessor. Id. at 182 n. 5, 94 S.Ct. at 424 n. 5. We add that this consideration is premised upon the concept that a voluntary sale of all assets includes, or should include, negotiations as to the transfer of all aspects of the corporate balance sheet. The parties to the sale are free to bargain, and potential liability is certainly one of the factors that rational businessmen include in the negotiations of such sales. And, of course, if the parties seek to destroy the remedies of third parties through the sale, that in itself provides a reason to impose liability on the successor. As noted by the Court, the second circumstance under which liability is imposed is when "the transaction is entered into to escape liability." Id. at 182 n. 5, 94 S.Ct. at 424 n. 5. Quite obviously, an auction pursuant to involuntary bankruptcy proceedings is not a voluntary transaction in which both parties negotiate terms of sale. The sale terms are set by the United States Bankruptcy Court. Further, the bankrupt entity is only nominally the owner of the assets to be sold, because the purchase price will be distributed by the United States Bankruptcy Court to the creditors of the bankrupt. Thus, the ability of "predecessor" and "successor" to formulate sale terms to defraud third parties by the sale is absent; in fact, it is precisely for the benefit of third parties (creditors of the bankrupt) that the sale is ordered by the bankruptcy court.
Third, the court noted that liability is generally imposed when "the purchaser is merely a continuation of the selling corporation." Id. at 182 n. 5, 94 S.Ct. at 424 n. 5. This circumstance would include the surviving corporation in most mergers. See La.Rev.Stat. 12:115(E). See also 15A W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 7122 (Perm. ed. M. Wolf 1967) (listing mergers and consolidations as separate circumstance for imposition of successor liability, and separately defining continuation doctrine as all other sales of assets in which the purchasing corporation is "mere continuation of seller.") Moreover, this rationale for liability would include some non-merger sales in which one corporation or other business entity sells all its assets to another legal entity. The key consideration is whether the successor is, in fact, a "continuation" of the predecessor. The extent to which predecessor and successor have common shareholders, directors, officers, or even employees are pertinent considerations. Further, prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public.
In light of the consumer-oriented goals of product liability doctrines, some jurisdictions *1128 have recently recognized that the traditional rules of successor liability, designed largely to protect creditors of the selling entity that are identifiable at the time of the sale, may not adequately provide for the situation in which a person is injured by a defective product manufactured and placed into commerce by the selling corporation when that injury occurs years after that corporation has ceased to exist. The disappearance of the selling corporation before the injury occurs effectively eliminates the injured party's remedy against that corporation. From the viewpoint of the plaintiff, the problem is whom to sue; the course followed, naturally enough, is that redress is sought from the existing business or businesses most identifiable with the product.
In line with this train of thought, which, unlike the traditional successor rules, is far more concerned with the objective of compensation for the plaintiff than with finding actual responsibility for the injury on the part of the defendant, an extensive revision of the successor corporation doctrine for products cases has been fashioned by the California courts. The leading case in that jurisdiction, Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977), holds simply that a business which purchases the manufacturing assets of another business, and continues to manufacture the line of products manufactured by the selling business, is liable for claims arising from defective products made and placed into commerce by the selling business. Thus, Alad fundamentally alters the "continuation" doctrine of successor liability: instead of premising liability on whether and to what extent there is a continued de facto existence of the seller (i.e., a search for shareholders or other owners, directors, officers, or possibly employees common to both the predecessor and the successor business), Alad premises liability on the continued manufacture of the seller's product by the purchasing business (whether or not there are any other shared characteristics of predecessor and successor apart from the purchase of assets and the continued manufacture of the product). Alad gives three reasons for the adoption of its version of the "continuation" test:
"(1) The virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business."
19 Cal.3d at 31, 560 P.2d at 9, 136 Cal.Rptr. at 580. But see Leannais v. Cincinnati, Inc., 565 F.2d 437, 441 (7th Cir.1977) (applying Wisconsin law) (rejecting "continued product line" theory as impermissible judicial legislation). Stated succinctly, the traditional "continuation" doctrine discussed in Golden State focuses on the continued common identity, from predecessor to successor, of the real or juridical persons who own, control, or work with the transferred assets; conversely, the Alad "continued product line" doctrine focuses on the continued manufacture of the predecessor's product by the successor firm.
Plaintiff as much as concedes that Smith International is not a continuation of Lehmann Machine. There are no shareholders, directors, or officers common to both firms, and only one employee who worked for Lehmann Machine ever worked for Smith International. The two companies had no business relationship. Plaintiff argues, however, that this court should find that Smith International is liable for his injury caused by a defective Lehmann Machine lathe under the Alad continued product line doctrine.
We hesitate either to adopt or to decline to adopt the Alad rule or any variation thereon, for this case can be decided on less far-reaching grounds. Under the established facts of this case, Smith International is not a "successor" to Lehmann Machine such that liability should be imposed upon it for defective products made and sold by Lehmann Machine under any reasonable test of successor liability.
*1129 Although we must be more conscious of our own system of state law, it is at least illuminating to note that no discovered case from any of our sister states has ever premised successor liability on a connection as tenuous as a partial purchase of a dissolving firm's assets at a bankruptcy auction. Even under the cases using the product line test, a sine qua non is that the predecessor firm voluntarily transferred all of its assets to the successor. This circumstance would appear to be the basis for the first rationale of the Alad rule: that the successor caused the destruction of plaintiff's remedy against the predecessor by acquiring all assets of the latter firm, which effectively ends the latter's existence and solvency. Cf. La.Rev.Stat. 12:147 (liabilities in corporation dissolution). In the instant case, involuntary bankruptcy proceedings dissolved Lehmann Machine; Smith International's purchase of selected Lehmann Machine assets had no effect on the termination of plaintiff's remedy against the latter.
We can find no reasonable basis for imposing potential liability on Smith International in this case. Whatever the merits of fashioning a possible remedy for plaintiff may be, it remains a basic element of our tort law that a defendant must be responsible in some manner for plaintiff's injury before that defendant can be held answerable in damages. Compensation is certainly an important goal of our tort law, but it does not override the premise that compensation must be made by one responsible for the tort. We hold today that Smith International is not responsible for the alleged tortious injury of plaintiff. Smith International neither made nor placed into commerce the product that allegedly injured plaintiff. Thus, Smith International is not directly responsible for plaintiff's alleged injury. Further, under the circumstances of this case, we find no basis for imposing indirect liability on Smith International as a successor to Lehmann Machine. Smith International's only connection with Lehmann Machine is the purchase of some of the latter's assets at a bankruptcy sale. In our opinion, this does not make Smith International a successor to Lehmann Machine. In the absence of a closer relationship between the two businesses, or a complete, voluntary transfer of assets, we attach little weight to Smith International's arguable use of Lehmann Machine goodwill through the "Lehmann Lathe" trade name. Finally, as this case makes clear, Smith International may be the only potential entity available to "spread the risk" for injuries caused by old Lehmann Machine products. Again, however, we note that principles which further compensation solely, whatever their social utility, must be tempered with the realization that compensation is not an end in itself in our system of tort law; rather, some form of responsibility for the injury must also be established in the party from whom compensation is sought.
Based on the above reasons, the district court's judgment is affirmed. Costs of this appeal are assessed to plaintiff Tommy Bourque.
AFFIRMED.