ROYAL INSURANCE CO.

v.

SMATCO INDUSTRIES INC., et al.

Civil Action No. 95–3316.

United States District Court,
E.D. Louisiana.

Aug. 15, 1996.

Michael Alton Britt, Michael A. Britt, Attorney at Law, New Orleans, LA, for plaintiff.

Michael L. McAlpine, Richard Abelard Cozad, Gregory Lawrence Ernst, McAlpine, Peuler & Cozad, New Orleans, LA, for defendant.

## ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is defendant Smatco Industries Inc.'s Motion for Summary Judgment. Smatco Industries, Inc. ("Smatco Industries") contends that it should not be held liable to plaintiff as a successor corporation to Smatco, Inc. ("Smatco"), the entity which allegedly manufactured the winch that injured plaintiff's insured. For the following reasons, defendant's motion is DENIED.

### Background

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, the parties agree that the material facts are uncontested. Their dispute is over whether defendant is entitled to judgment as a matter of law.

The undisputed facts are as follows. In 1974, TBW Industries, Inc. was formed as the parent company of several wholly-owned subsidiaries, all of which were involved in the manufacture of products for the offshore oil and gas industry. One of these subsidiaries was Smatco, Inc., which manufactured winches. Robert M. Thompson, Sr. was involved in the formation of TBW Industries, Inc., and its corporate subsidiaries. He was a shareholder and served as president of TBW Industries, Inc. He also served as president of Smatco, Inc. In January of 1984, TBW Industries, Inc. and its subsidiaries filed for bankruptcy.

In 1985, Gulf Island Industries, Inc. ("GII") was incorporated by several investors who were interested in purchasing certain assets of TBW Industries in the bankruptcy proceedings. In 1985, it purchased the Smatco product line, along with its name, patents, and trademarks, and the Smatco plant and equipment located at Mulberry Road in Houma. This was a cash sale approved by the United States Bankruptcy Court for the Eastern District of Louisiana. Robert M. Thompson was not an owner of GII, but he was a director and employee of the company. John Ledet was general manager at the Smatco plant under GII's ownership. Most of the employees of the Smatco plant continued working for GII, doing the same work, under the same contracts.

After six months of serving as operational manager for GII, Thompson resigned to run Cross Associates, Inc., a company he had bought in 1980 and subsequently given to his four children. In 1985, Cross Associates began doing repair and service work for winches and other oil-industry related machinery. Shortly after Thompson's departure to run Cross Associates, GII ceased to do business and declared bankruptcy. In 1986 or early 1987, Cross Associates purchased from GII in a bankruptcy sale certain winch inventory and parts. In December of 1987, Cross Associates also bought the Smatco product line, consisting of the name, patents, logo, trademarks, blueprints, work files, and job files. In April of 1989, it bought from bankruptcy the Mulberry Road plant of the former Smatco, Inc. During this period, Thompson was president of Cross Associates, and ran the company on a daily basis, but did not have any ownership interest in it. Ledet was also a Cross employee, along with seven or eight other Smatco employees.

In June of 1989, Cross Associates changed its corporate name to Smatco Industries, Inc., in an effort to improve its marketing position. In late 1990, the company moved into the Mulberry Road plant. Since 1989, Smatco Industries has represented itself as the spare parts and service agent for Smatco. The current business of Smatco Industries is the manufacture of the Smatco product line, including such deck machinery as winches, capstans, and air leaders; manufacture of newly designed winches; and service and repair of winches and parts of all similar product manufacturers. It is owned in equal parts by Robert M. Thompson, Sr., his three sons, and John M. Ledet.

Smatco Industries currently employs between sixty-five and eighty people, twenty-two of whom were formerly employed by Smatco, Inc. The current president is John Ledet, who had been working at Smatco, Inc. since 1972. Robert M. Thompson serves as Chairman of the Board.

### Analysis

■ Defendant first contends that it cannot be held liable under the literal language of the Louisiana Products Liability Act, La.Rev.Stat. § 9:2800.52, which purports to establish "the exclusive theories of liability" for recovering damages caused by a defective product. This argument is flawed. Plaintiff's claim has been brought in this Court based not on diversity, but rather on the admiralty jurisdiction of this Court. "With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law developed by the judiciary applies." *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986) (citations omitted). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* at 864–65, 106 S.Ct. at 2299. Where there is no uniform federal rule, courts may adopt state law "by express or implied reference or by virtue of the interstitial nature of federal law." *Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir.1983); *see also Sullivan v. Rowan Companies, Inc.*, 952 F.2d 141, 148 (5th Cir.1992). However, to the extent that state law radically differs from general principles recognized elsewhere, it should not be incorporated into maritime jurisprudence. Even if defendant is correct that the enactment of the Louisiana Products Liability Act changed Louisiana law so as to disallow corporate successor liability entirely, the Court would not apply that aspect of the Act in this maritime case.

The Court has found no cases applying a rule of successor corporate liability in the maritime context. However, the United States Supreme Court, in *Golden State Bottling Co. v. National Labor Relations Board*, 414 U.S. 168, 182 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 (1973), set forth the basic principle of successor corporate liability:

> [T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.

*Id.* The Louisiana courts have followed that general rule. *See, e.g., Bourque v. Lehmann Lathe, Inc.*, 476 So.2d 1125, 1127 (La.Ct.App. 3rd Cir.1985). In this case, plaintiff urges the Court to conclude that Smatco Industries, Inc. is "merely a continuation" of Smatco, Inc. Defendant contends that such a finding is precluded by the fact that Smatco Industries did not obtain Smatco, Inc.'s assets through a voluntary transaction, but rather through two bankruptcy sales. Resolution of defendant's motion thus requires analysis of two issues: whether the fact that Smatco Industries acquired its assets through a bankruptcy sale precludes liability, and, if not, whether the "mere continuation" doctrine applies to this case.

### 1. *Effect of the Bankruptcy Sale*

■ The Court finds that a voluntary transfer of assets is not a prerequisite to the imposition of successor corporate liability. Although the *Bourque* court noted that "no discovered case ... has ever premised successor liability on a connection as tenuous as a partial purchase of a dissolving firm's assets at a bankruptcy auction," *id.* at 1129, its conclusion was not that a finding of successor liability was precluded by the bankruptcy sale, but rather that, "in the absence of a closer relationship between the two businesses *or* a complete, voluntary transfer of assets, we attach little weight to [the successor's use of the predecessor's trade name]." *Id.* (emphasis added). Other courts to have considered the issue have not held that an asset transfer must be voluntary to allow for successor corporate liability. *See, e.g., Goncalves v. Wire Technology & Machinery Co.*, 253 N.J.Super. 327, 601 A.2d 780 (Law Div.

1991) (applying "product line" theory of liability); *Matter of Mooney Aircraft, Inc.*, 730 F.2d 367, 375 (5th Cir.1984) (declining to address merits of whether successor liability existed under the facts before it, but reversing bankruptcy court's injunction against pursuing claims against successor corporation who had acquired predecessor's assets through bankruptcy); *Renkiewicz v. Allied Products Corp.*, 196 Mich.App. 309, 492 N.W.2d 820, 824 (1992) (finding *Mooney Aircraft* persuasive); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630, 637 (S.D.N.Y.1995) ("there is no federal preemption of state law successor liability merely because the sale of assets occurred in a bankruptcy proceeding"); *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent), Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 51 (7th Cir.1995) ("the district court ... was not absolutely precluded by the bankruptcy proceedings from finding successor liability against [the successor corporation]").

Based on these precedents, the Court finds no grounds for adopting in the maritime context a holding that a transfer of assets through a bankruptcy sale absolutely precludes a finding of successor liability.

### 2. The "Mere Continuation" Theory

The "mere continuation" theory has developed into two lines of cases. Under the conventional formula, a purchaser of assets is not a continuation of the seller of assets unless, after the sale, there is only one corporation, and there is an identity of stock, stockholders, and directors. *Mozingo v. Correct Manufacturing Corp.*, 752 F.2d 168, 175 (5th Cir.1985) (applying Mississippi law). Under a second, more expansive version of the conventional formulation, courts consider whether, in addition to the factors mentioned above, the successor corporation retains the predecessor corporation's employees; represents that it is a continuation of the predecessor enterprise; retains the supervisory personnel of the predecessor; retains the same production facilities in the same physical location; produces the same product; retains the predecessor's name; and continues the predecessor's general business opera-

tions. *Id.* Under this formulation, designation of the purchaser as a successor corporation does not depend on the existence of a single corporation and the identity of stock, stockholders, and officers. *Id.*

The *Bourque* court employed this more liberal, "substantial continuity," approach, while expressly reaching its holding based solely on the facts before it, without purporting to adopt a theory of successor liability for Louisiana. In determining whether liability should be imposed under the "mere continuation" theory, it held,

> [t]he key consideration is whether the successor is, in fact, a "continuation" of the predecessor. The extent to which predecessor and successor have common shareholders, directors, officers or even employees are pertinent considerations. Further, prior business relationships should be considered, as should the continuity of the identity of the business in the eyes of the public.

*Bourque*, 476 So.2d at 1127. The touchstone of any analysis of successor liability is the "basic element of our tort law that a defendant must be responsible in some manner for plaintiff's injury before that defendant can be held answerable in damages." *Id.* at 1129. Because there is no uniform federal rule, and because the discussion of corporate successor liability found in *Bourque* is not a departure from rules found in other jurisdictions, both state and federal, the Court will apply its principles in this case.

Many of the elements discussed in *Bourque* and similar cases in other jurisdictions point toward the imposition of successor liability in this case. The same man, Robert M. Thompson, Sr., was involved in the formation of Smatco, Inc., and has been actively involved in the management of its product line through several changes in corporate ownership. His family owned Smatco, Inc. Although he did not have an ownership interest in every incarnation of the company, he now owns Smatco Industries, the entity sought to be sued, along with three of his children and a fellow former employee of Smatco, Inc. These five individuals also make up the Board of Directors of Smatco Industries, along with one other

person, with Robert M. Thompson, Sr., serving as Chairman of the Board, John Ledet serving as President, and two of Thompson's sons serving as Vice–President and Secretary. One third to one fourth of the employees of Smatco Industries are people who worked for Smatco, Inc., more than ten years ago. Smatco Industries chose its name precisely to capitalize on Smatco, Inc.'s goodwill. In its promotional literature, it boasts that it "was formed in 1948," that its first winch "was designed and built by Robert M. Thompson, Sr., current president of Smatco Industries, Inc.," and that "since that time, Smatco has developed a standard line of winches [and other equipment]." It further refers to its "extensive background in the marine industry." It occupies the same plant, and has the same address, as Smatco, Inc. had before it declared bankruptcy. The Court finds these connections sufficient to impose successor liability despite both the fact that the assets were acquired through bankruptcy sale rather than a voluntary transfer and the additional fact that operations were not continuous from the time the predecessor corporation manufactured the allegedly defective winch to the time that plaintiff's insured sought to sue the successor corporation.[1]

*Conclusion*

For the foregoing reasons, defendant's Motion for Summary Judgment is DENIED.

---

**1.** This holding is not based on a pure application of the "product line" theory of successor liability, which has not been adopted by Louisiana courts or other courts applying maritime law. *Bourque,* 476 So.2d at 1128; *Page v. Gulf Oil Co.,* 812 F.2d 249, 250 (5th Cir.1987).