BELSOME, J.,
dissents with reasons.
1,1 dissent.
In our de novo review of the trail court’s grant of summary judgment in favor of DDC, we are limited to determining whether the plaintiffs have established a genuine issue of material fact, regarding DDC’s successor liability as to pre-1988 asbestos exposure and direct liability as to post-1988 asbestos exposure, sufficient to overcome summary judgment. A review of the record indicates that the plaintiffs have met this burden.
The issue of successor liability directs us to the applicability of the “mere continuation rule.” The “mere continuation rule” is a rule of successor corporation liability whereby liability is generally imposed when an acquiring corporation is a mere continuation of the selling corporation. Bourque v. Lehmann Lathe, Inc., 476 So.2d 1125, 1127 (La.App. 3 Cir.1985), citing Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Here the plaintiffs have asserted *247 that DDC is clearly a continuation of GM’s Detroit Diesel-Allison Division.
The Hollowell court offered three instances in which a new corporation can be a successor corporation for liability purposes:
(1)The new company expressly assumed the liabilities of the old company; or (2) The formation of the new company was entered into to defraud the creditors of the old company; or (3) The circumstances attending the creation of the new company and its succession to the business and property of the old company are such that the new company was merely a continuation of the old company.
Hollowell v. Orleans Regional Hospital LLC, et al, 217 F.3d 379 (5th Cir.2000). The mere continuation doctrine premises liability on whether and to what extent there is a “continued de facto existence of the seller.” Bourque v. Lehmann Lathe, Inc., 476 So.2d 1125, 1128 (La.App. 3 Cir.1985). The determination of whether a new corporation is simply a continuation of the old corporation is fact intensive.
In Hollowell. the court provided eight factors to apply in making the mere continuation determination:
(1) retention of the same employees;
(2) retention of the same supervisory personnel;
(3) retention of the same production facility in the same physical location;
(4) production of the same product;
(5) retention of the same name;
(6) continuity of assets;
(7) continuity of general business operations; and
(8) whether the successor holds itself out as the continuation of the previous enterprise.
Hollowell, 217 F.3d 379.
The majority of the elements mentioned above are addressed within the sales agreement between GM and DDC, and the affidavit of DDC’s corporate representative, Dave Merrion. Those documents indicate that Detroit Diesel-Allison Division manufactured Detroit Diesel branded engines. On January 1, 1988, Detroit Diesel Corporation (DDC) was formed as a partnership between GM |3and Penske Corporation. DDC proceeded to purchase the assets of GM’s Detroit Diesel-Allison Division.
The sales agreement specifically required DDC to offer employment to approximately 2700 salaried and hourly employees and provide them with benefit programs comparable to those previously offered by GM. When addressing the facility location and assets to be transferred, the agreement reads:
The purpose of this Agreement is to set forth the conditions of transfer of the business and assets currently carried on by General Motors Corporation ... through its Detroit Diesel Allison Division ... at its manufacturing facilities at Redford Township and adjoining Detroit, Michigan ... to Detroit Diesel Corporation or its successors or assigns, including, but not limited to, the business of development, manufacture, assembly and sale of diesel engines.
[[Image here]]
GM shall ... sell, transfer, assign, convey and deliver to DD and DD shall purchase, accept and acquire from GM or any Affiliate as hereinafter provided all the assets and properties ... relating to the Redford Operations ...
Essentially, the product, the Detroit Diesel name, the production location, the employees and the overall general business operations remained the same. Clearly the inquiries into the relevant factors support plaintiffs’ assertion that DDC is a mere *248 continuation of GM’s Detroit Diesel-Allison Division. The plaintiffs have more than met their burden to overcome summary judgment and allow the question of successor liability to be submitted to the jury.
However, the majority opinion, citing to Golden State Bottling Co., contends that the one fatal issue that prevents the plaintiffs from being able to assert successor liability under the continuation exception, is that the continuation exception mandates that one corporation purchase all the assets of another. The majority’s opinion claims that based on David Marrion’s affidavit, GM retained certain assets pertaining to specific engines and therefore, the plaintiffs cannot overcome that hurdle. Significantly, the sales agreement does not reference the [Retention of those assets in its “Excluded Assets” provision. That alone, creates a genuine issue of material fact as to whether all GM owned assets relating to the Detroit Diesel-Allison Division were purchased by DDC. Thus, DDC is not entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, p. 5 (La.7/6/04), 880 So.2d 1, 5. Considering the record, we are required to allow the issue of successor liability to be presented to the fact finder.
Additionally, based solely on David Mar-rion’s affidavit statement, the lower court and majority’s opinion found that DDC, from its inception in 1988, never sold or manufactured asbestos-containing products. Although I do not find that the plaintiffs have proven otherwise, as late as 1986, the specification sheet for DDC’s diesel engines still identified asbestos containing materials. The record is void of any later specification evidencing all asbestos containing materials had been phased out of the diesel engines. At a minimum, this raises a question of fact sufficient to warrant additional discovery. Accordingly, I would reverse the trial court’s grant of summary judgment in favor of Detroit Diesel Corporation and remand.